UNITED STATES of America,

v.

Ronald J. GOLDBERG, Defendant.

No. 4:CR–94–0039.

United States District Court,
M.D. Pennsylvania.

June 21, 1994.

Frederick D. Martin, Asst. U.S. Atty., Lewisburg, PA, for U.S.

Defendant, pro se.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On March 16, 1994, a grand jury sitting in the Middle District of Pennsylvania returned a two-count indictment against defendant Ronald J. Goldberg charging him with forging the signature of a United States Magistrate Judge of the Southern District of Florida, in violation of 18 U.S.C. § 505 (Count One), and with knowingly making a false representation concerning a matter within the jurisdiction of a department of the United States, in violation of 18 U.S.C. § 1001 (Count Two). Trial before a jury commenced on Monday, June 13, 1994, and the jury returned verdicts of guilty on both counts. Sentencing is scheduled for September 13, 1994.

Prior to trial, the court took the unusual step of allowing Goldberg's court-appointed counsel to withdraw without the appointment of substitute counsel. This memorandum is intended to set forth the basis for that ruling.

### DISCUSSION:

#### A. STATEMENT OF FACTS/PROCEDURAL HISTORY

On March 16, 1994, the grand jury indicted Goldberg, an inmate at the United States

Penitentiary at Lewisburg, Pennsylvania, on the above-stated charges. At his arraignment on April 11, 1994, Goldberg entered a plea of "not guilty," jury selection was scheduled for May 31, 1994, and the issue of bail was found to be moot due to Goldberg's incarceration. Goldberg was represented at arraignment by counsel appointed by the court, as is the practice when inmates are indicted. However, no financial statement was ever completed by Goldberg.

On April 26, 1994, counsel filed a motion to inspect grand jury testimony, and at the same time filed a motion seeking ten additional days to substantiate the motion and an additional ten days for filing of a supporting brief. The latter motion, which was granted April 29, 1994, indicated that counsel traveled to USP–Lewisburg on April 22, 1994, for the purpose of consulting with Goldberg regarding motions, but that Goldberg refused to attend counsel's visit. Counsel was left waiting for two hours.

On May 27, 1994, Goldberg filed an "Emergency Motion for Removal of Counsel and for Continuance of Trial or in the Alternative to Proceed *In Propia Persona.*" This motion set forth as grounds for the substitution of counsel: (1) counsel and Goldberg disagreed as to how to conduct a defense; (2) counsel was not well-versed in federal criminal procedure; (3) counsel was not interested in Goldberg's case; and (4) counsel had not filed motions desired by Goldberg nor met with Goldberg to discuss strategy. In the alternative, Goldberg asserted his right to proceed *pro se* pursuant to *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The motion also emphasized Goldberg's desire to delay trial to familiarize new counsel with the case and/or for a psychiatric examination of Goldberg related to a duress defense.

On May 31, 1994, prior to jury selection, the court conducted an *ex parte* hearing on Goldberg's motion to substitute counsel, the purpose of which was to clarify Goldberg's reasons for doing so and the factual basis therefor, and to allow counsel to respond to Goldberg's allegations.

Following this colloquy, which will be discussed at length below, the court denied Goldberg's motion. Also, Goldberg did not indicate a knowing, intelligent or voluntary waiver of counsel, and so was not permitted to proceed *pro se* pursuant to *Faretta.* Succinctly stated, there was no substantial basis to allow, on the eve of jury selection, the substitution of counsel and concomitant delay in trial.

At the same time, the court learned that the appointment of counsel probably was unnecessary, as Goldberg indicated that he possessed sufficient assets to pay a privately retained attorney. He had not done so between arraignment and jury selection, but indicated that he planned to do so before trial. The court did not continue trial, but indicated that a motion to continue would be entertained once new counsel entered an appearance.

Jury selection took place May 31, 1994, as scheduled, with full participation by defendant's court appointed counsel. Presentation of the case to the jury was then scheduled for June 13, 1994.

On Monday, June 6, 1994, defense counsel initiated a conference call involving himself, the court, and government counsel. Defense counsel indicated that, on Thursday, June 2, he had received a telephone call from Goldberg at USP–Lewisburg for the purpose of passing the file on to new counsel. No new appearance of counsel had been entered, and counsel indicated to Goldberg that, until an entry had been made, the file would not be relinquished. Goldberg then demanded that counsel withdraw and gave reasons to be presented to the court, including an allegation that counsel was not competent. Counsel indicated to Goldberg that the court already had denied such a motion, and that there was no basis for reconsideration. Goldberg then threatened the life of counsel, stating that he would use the money otherwise to be spent on new counsel to have someone outside USP–Lewisburg "get" counsel. When counsel asked what Goldberg meant, Goldberg responded that counsel

knew what was meant and that counsel did not know with whom he was dealing.[1]

At that point in the conference call, counsel made an oral motion to withdraw which the government did not oppose but did indicate a concern that Goldberg was manipulating the situation. The court agreed, and the motion to withdraw was granted without the appointment of new counsel. The court specifically found that Goldberg had manipulated the right to counsel. Over Goldberg's objection, repeated to exhaustion, Goldberg represented himself at trial. Goldberg sought a continuance to obtain private counsel which was denied by the court. At one point, Goldberg indicated that he had found counsel, but that he needed time to liquidate assets to pay a retainer fee; the motion for continuance was denied.

After trial, the jury found Goldberg guilty on both counts of the indictment.

### B. THE RIGHT TO COUNSEL

In *United States v. Eddie Jennings,* 855 F.Supp. 1427 (M.D.Pa.1994), we found that Jennings had waived the right to appointed counsel by his conduct in punching his court-appointed attorney in open court without provocation or justification. Our discussion in *Jennings* of the right to counsel on the part of criminal defendants is sufficient for present purposes, and we repeat it here:

### A. The Right to Appointed Counsel

It is axiomatic that an indigent defendant has the right to appointed counsel and to be informed of that right. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965). The right of an accused to effective assistance of counsel, however, does not extend to the appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel. *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–18, 75 L.Ed.2d 610 (1983); *Si-*

ers v. Ryan, 773 F.2d 37, 44 (3d Cir.1985) (citing *Davis v. Stamler,* 650 F.2d 477, 479–480 (3d Cir.1981)), *cert. denied,* 490 U.S. 1025, 109 S.Ct. 1758, 104 L.Ed.2d 194 (1989). There is no right to counsel who will blindly follow the defendant's instructions. *United States v. Dawes,* 874 F.2d 746, 748 (10th Cir.), *reh'g denied, cert. denied,* 493 U.S. 920, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989), *coram nobis granted on other grounds,* 895 F.2d 1581 (10th Cir.1990). Moreover, a defendant may not manipulate the right to counsel, or the right to self-representation, in order to delay or disrupt a trial. *Berry v. Lockhart,* 873 F.2d 1168, 1171 (8th Cir.1989); *United States v. Flewitt,* 874 F.2d 669, 674 (9th Cir.1989); *United States v. Gallop,* 838 F.2d 105, 108 (4th Cir.), *cert. denied,* 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *United States v. Thier,* 801 F.2d 1463, 1471 (5th Cir.1986), *modified on denial of reh'g,* 809 F.2d 249 (1987). In a slightly different context, the Supreme Court noted, "The right of self-representation is not a license to abuse the dignity of the courtroom." *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2540 n. 46, 45 L.Ed.2d 562, 581 n. 46 (1975) (referring more specifically to a disruptive or obstructionist defendant).

The Third Circuit Court of Appeals has reviewed cases in which a criminal defendant's attempt to substitute counsel or proceed *pro se* would delay the trial. In one case, the Court held,

Where, on the eve of trial, a defendant seeks new counsel, or, in the alternative, opts to represent himself, the district court must engage in two lines of inquiry. First, the court must decide if the reasons for the defendant's request for substitute counsel constitute good cause and are thus sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained. If the district court determines that the defendant is not entitled to a continu-

---

**1.** The facts related in the foregoing paragraph are consistent with the representations made by counsel during the telephone conference call, at trial when counsel testified (out of the presence of the jury) regarding the incident, and in counsel's affidavit filed at the request of the court (record document no. 42).

ance in order to engage new counsel, the defendant is then left with a choice between continuing with his existing counsel or proceeding to trial *pro se,* thus bringing into play the court's second stage of inquiry. Since the decision to proceed *pro se* involves a waiver of the defendant's sixth amendment right to counsel, the district court then has the responsibility of ensuring that any decision by the defendant to represent himself is intelligently and competently made....

*United States v. Welty,* 674 F.2d 185, 187 (3d Cir.1982) (citation omitted). Reasons which may constitute "good cause" for the substitution of counsel which delays trial may include a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney which leads to an apparently unjust verdict, as well as the timeliness of the motion. *Welty,* 674 F.2d at 188; *see also United States v. Johnson,* 961 F.2d 1488, 1490 (10th Cir.1992) (citing, *inter alia, McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982)).

The Third Circuit reaffirmed its holding in *Welty* in *McMahon v. Fulcomer,* 821 F.2d 934 (3d Cir.1987), and added, "Certainly 'there is no absolute right to a particular counsel,' ... and the right to chose [sic] a particular lawyer 'must be balanced against the requirements of the fair and proper administration of justice.' " *McMahon,* 821 F.2d at 942 (citation omitted).

Finally, the Third Circuit has held that there was no good cause shown for the substitution of counsel where the reasons expressed by the defendant, without further substantiation, were that counsel had exhibited a lack of enthusiasm for the case and was inadequate in dealing with the issues of the case. *Govt. of the Virgin Islands v. James,* 934 F.2d 468, 470–471 (3d Cir.1991) (relying upon *Welty* ).

The general proposition we apply to Jennings' conduct was stated eloquently yet concisely by the Court of Appeals for the Fifth Circuit: "The right to assistance of counsel, cherished and fundamental though it be, may not be put to service as a means of delaying or trifling with the court." *United States v. Fowler,* 605 F.2d 181, 183 (5th Cir.), *reh'g denied,* 608 F.2d 1373 (5th Cir.1979) (table), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980).

### B. Substitution of Counsel

. . . . .

... *Cf. McQueen v. Blackburn,* 755 F.2d 1174, 1178–1179 (5th Cir.) (defendant's insistence on dismissing appointed counsel unreasonable when defendant wanted counsel to follow defendant's instructions blindly, rather than proceed in counsel's own well-considered manner, and attorney defended client "ably and tenaciously"), *cert. denied sub nom. McQueen v. Maggio,* 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985).

To all of the foregoing, it should be added that Jennings' attempt to substitute counsel was a transparent attempt to use the right to counsel to manipulate the judicial system and delay trial. It is part of a pattern of attempts at manipulation by inmates of USP–Lewisburg appearing before the court.

In *United States v. Ron Moore and Carlos Johnson,* 4:CR–92–0322, the defendants attempted an attack on their court-appointed counsel in the marshals' holding cell. The attempted attack followed an unjustified motion for the removal of Ron Moore's appointed counsel. Unable to reach counsel through the restraining barriers in the holding cell, those defendants spat upon and threatened the life of counsel. The court thereafter allowed counsel to withdraw, but only after Moore waived the right to counsel and asserted his right to proceed *pro se,* an election he was entitled to make without taking the described action against counsel.

This pattern of attempted manipulation by USP–Lewisburg inmates has continued. In fact, three USP–Lewisburg inmates were scheduled to select juries on May 31, 1994. All three moved, on the eve of jury selection, for substitution of counsel and for the filing of notices of insanity defens-

es. *United States v. Eddie Jennings,* —— F.Supp. —— (the instant case); *United States v. Stephen G. Rollins,* No. 4:CR–94–037 (possession of prohibited objects); *United States v. Goldberg,* No. 4:CR–94–039 (forging the signature of a magistrate judge and making a false statement). None of these inmates had a substantial basis to move to substitute counsel.

Certainly, the fact that one or more inmates has filed a frivolous motion for the substitution of counsel does not indicate that no inmate from the same institution is entitled to new counsel. We cite these numerous cases of identical, frivolous motions which, if granted, would delay and disrupt the efficient administration of justice, only to underline the rationale for careful scrutiny of these motions to ensure that good cause exists for the substitution of counsel and ensuing delay of trial.

### C. Waiver of Counsel

■ We have noted that a court has the responsibility to ensure that a waiver of counsel is intelligently and competently made. *Welty, supra.* This fundamental rule applies when the defendant asserts the right to proceed *pro se,* since exercise of this right necessarily entails a waiver of the right to appointed counsel.

■ There are, however, instances in which an accused waives by implication the right to be represented by counsel. Deleterious or manipulative conduct on the part of an accused also may amount to a waiver of the right to be represented by counsel. *See, e.g. United States v. Fazzini,* 871 F.2d 635 (7th Cir.) (defendant's failure to cooperate with four successive attorneys appointed to represent him constituted waiver of right to counsel), *cert. denied,* 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *United States v. Mitchell,* 777 F.2d 248 (5th Cir.1985) (defendant waived his right to counsel when, in bad faith and for purpose of delay, defendant retained counsel known to have a conflict of interest and failed to retain other counsel), *cert. denied,*

476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986); *Richardson v. Lucas,* 741 F.2d 753 (5th Cir.1984) (refusal of defendant to allow any public defender, regardless of competence, to represent him was waiver of right to counsel); *United States v. McFadden,* 630 F.2d 963 (3d Cir.1980) (defendant waived right to counsel by attempting to direct, rather than cooperate with, two attorneys appointed to represent him, by firing those attorneys, by indicating an intent to proceed *pro se,* and by failing to join in a continuance, required due to operation of the Speedy Trial Act, for the appointment of new counsel), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981).

*United States v. Jennings,* 855 F.Supp. 1427, 1441–43 (M.D.Pa.1994) (footnotes omitted).

### C. LACK OF GOOD CAUSE FOR SUBSTITUTION OF COUNSEL

■ As noted above, the court denied Goldberg's "emergency" motion to remove counsel and appoint new counsel because Goldberg failed to state good cause for the substitution. As to Goldberg's allegations concerning counsel's desire to defend the case, they are of little merit. It is common practice for defense lawyers to advise their clients to accept an offered plea bargain with the government that is beneficial to the defendant. Defense counsel's representations concerning the motions desired by Goldberg indicate that he considered to motions to be of no merit, and so did not file them.[2] The failure to visit Goldberg personally was entirely the responsibility of Goldberg, who admittedly did not go to the visiting area to consult with counsel on April 22, 1994. Goldberg offered only as an excuse that corrections officers did not tell him who was waiting to see him, and that government investigators had visited him on previous occasions.

---

**2.** A letter sent by counsel to Goldberg, provided to the court by Goldberg, supports this representation. Emergency Motion, etc., Exhibit B.

It also should be added that the motions requested by Goldberg in fact are without merit. Set forth in Goldberg's emergency motion, Exhibit C, the proposed motions and the reasons for their lack of merit are:

(1) Motion for a continuance based upon counsel's schedule and for an extension of time to file pretrial motions. These motions were filed and disposed of by the court. *See* Orders of Court dated April 29, 1994, and May 17, 1994.

(2) *Ex parte* motion for expert fees. There was no basis to question documents supplied by Goldberg himself.

■ (3) Motion to dismiss based upon Double Jeopardy. The case had not previously been tried; prison internal disciplinary proceedings do not constitute jeopardy.

(4) Motion for specific *Brady* request. A *Brady* request is provided to the government, not to the court via motion; no basis for a contention that the government has not provided *Brady* material has ever been provided.

■ (5) Motion to suppress. A motion to suppress statements made by Goldberg to a corrections officer was denied by the court because the statements were uttered spontaneously by Goldberg, i.e. without interrogation by the corrections officer.

■ (6) Motion for access to the court. Counsel having been appointed, there is no constitutional right to further access to the court (regardless of a court in Florida permitting otherwise); also, evidence produced at trial and in the hearing on the motion to suppress showed that Goldberg's legal mail was opened because it was not marked properly as legal mail.

(7) Motion for *in camera* inspection of grand jury records for *Brady* material. Goldberg's statements to the corrections officer were admissible, so that the statements could be used before the grand jury.

(8) Motion for bill of particulars. Goldberg never showed any reason for which a bill of particulars was necessary; the conduct set forth in the indictment was sufficient to show what criminal conduct was at issue.

(9) Motion for early disclosure under the Jencks Act. The Jencks Act itself sets forth the time by which disclosure by the government is required. Also, Goldberg was represented by counsel, so his own incarceration was immaterial.

■ (10) Motion to review all witnesses' statements even if not used at trial by the government. There is no legal authority for this motion, absent *Brady*, which requires disclosure only of exculpatory evidence, and does not require disclosure of all evidence for defense review.

■ (11) Motion to produce employment files of Bureau of Prisons personnel and to produce the government's witness list. The defense is not entitled to the government's list of witnesses. Also, staff employment records are confidential, and Goldberg states no legal reason entitling him to have access to such files.

■ (12) Motion to dismiss the indictment for an illegally constituted grand jury. The grand jury is selected from the same pool of jurors as are petit juries, *see generally* 28 U.S.C. §§ 1861 et seq., in a manner consistent with 28 U.S.C. § 1863. *See* Jury Selection Plan for the Middle District of Pennsylvania, adopted March 17, 1989, docketed to Misc. No. 89–069.

(13) Motion to produce materials pursuant to Fed.R.Evid. 404(b). These materials are produced pursuant to request directed to the government, not by motion. Regardless, notice was provided by the government on the record. *See* United States' Notice of Intention to Use Proof of Other Crimes as Evidence (record document no. 24).

■ (14) Motion to dismiss indictment based upon selective prosecution. In order to establish a claim of selective or discriminatory prosecution, a defendant first must provide evidence that others similarly situated have not been prosecuted, and second must show that the decision to prosecute is motivated by race, religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right. *Holder v. City of Allentown*, 987 F.2d 188, 198 n. 3 (3d Cir.1993) (citing *United States*

*v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir.), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989)). Goldberg's suit against the Bureau of Prisons is insufficient to establish selective prosecution; he pointed to no evidence demonstrating that other inmates who falsify court orders are not prosecuted.

Of course, to the obvious lack of merit appearing from the face of the document setting forth the desired motions should be added counsel's consideration of same and his conclusion that the motions lacked merit. Goldberg's unhappiness with the failure to file these motions might have been discussed had Goldberg elected to meet with counsel when counsel appeared at USP–Lewisburg.

Goldberg also contended that counsel somehow was ineffective or otherwise incompetent, but failed to substantiate this allegation.

■■■ Based upon all of the foregoing, the court concluded that there was not "good cause" to allow the substitution of counsel and delay the trial. Had Goldberg desired new counsel, and could he afford counsel as he claimed, he had ample time to do so between arraignment and jury selection, and failed to do so. His meritless attempts to substitute counsel, to file a "notice of insanity,"[3] to move for a continuance, and otherwise to delay trial through manipulation of his right to counsel and to file pretrial motions indicated a clear attempt to manipulate the right to counsel, and the attempt to do so was not permitted.

### D. PRO SE REPRESENTATION

■■■ Following the threat to cause harm to counsel, the court allowed counsel to withdraw, and no further counsel was appointed. In large part, we rely upon our opinion in *Jennings,* quoted above. There is no material difference between an attempt to manipulate the right to counsel through physical violence and an attempt to manipulate the right to counsel through the threat of physical violence. Neither has a proper place in the orderly and effective administration of

justice, and neither will be countenanced by the court.

In support of our decision to permit the withdrawal of counsel, to refuse appointment of substitute counsel, to refuse to delay trial, and to have Goldberg represent himself, we make the following findings:

1. On June 2, 1994, Goldberg made a clear and unequivocal threat to do serious bodily harm to his appointed counsel, which threat could be interpreted as a threat to the life of counsel.

2. The threat to do harm to counsel through the agency of a third party is consistent with Goldberg's assertions that he is not indigent, but in fact possesses considerable assets.

3. Goldberg's threats, therefore, are coupled with the apparent present ability to accomplish physical harm to counsel through the agency of a third party hired by Goldberg for such purpose.

4. As a consequence of the threats made by Goldberg, counsel was placed in fear of his own life and in fear for the safety of his family.

5. The withdrawal of counsel permitted by the court was consistent with the wishes of counsel and Goldberg, and was in furtherance of the orderly and effective administration of justice.

6. Goldberg having represented to the court that he possesses considerable assets, he was not entitled to the appointment of counsel by the court.

7. Goldberg having waived, by his conduct, the right to the appointment of counsel, he was not entitled to the appointment of counsel by the court.

8. Goldberg knew, at the time that counsel was appointed, that he had sufficient assets with which to retain private counsel should he choose, yet he failed to do so.

9. After jury selection, Goldberg was given an opportunity to retain counsel, yet he failed to do so.

---

**3.** Which, incidentally, fit the pattern of motions filed by USP–Lewisburg inmates discussed above.

10. The court had clearly indicated to Goldberg that, should he retain counsel before the date set for trial, the court would entertain a motion by counsel for a continuance.

11. Goldberg did not retain counsel between jury selection and trial, so that neither an entry of appearance nor a motion for a continuance was filed by counsel in the relevant time period.

12. Goldberg's production, on the morning trial was to begin, of a letter from counsel indicating that counsel would enter an appearance if Goldberg paid a retainer within 45 days, was insufficient compliance with the court's directive that an entry of appearance was to be filed.[4]

13. Goldberg, through his late motion for the withdrawal of counsel, the failure to obtain substitute counsel privately, and the threat against appointed counsel was attempting to manipulate the right to counsel in order to delay and disrupt his trial.

14. Any press for time experienced by Goldberg in his efforts to retain private counsel was due to his own dilatory tactics.

15. Goldberg was not entitled to a continuance for more time to retain private counsel.[5]

16. Goldberg waived the right to appointed counsel by his conduct in threatening appointed counsel, and he waived, through his own dilatory tactics, any right he may have had for more time in which to retain counsel; Goldberg's *pro se* representation is consistent with his own conduct, and is tantamount to his own choice of counsel.

**4.** The letter from counsel produced by Goldberg was from William C. Costopoulos, Esquire, a well-known attorney in Pennsylvania, who was occupied on the morning trial was to commence with the sentencing of former Pennsylvania Supreme Court Justice Rolf Larsen, a client of Mr. Costopoulos. Mr. Costopoulos is known also for his representation of Jay C. Smith in a long-running, high-profile murder case in which the alleged victims were schoolteacher Susan Reinert and her two children. *See Com. v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992). Goldberg's inability to obtain top-flight representation on the eve of trial is not indicative of the unavailability of competent counsel generally.

### E. CONCLUSION

For all of these reasons, despite his oft-stated objections to the contrary, Goldberg was not deprived by the court of his Sixth Amendment right to counsel. Goldberg's conduct was simply unacceptable in a court of law. Like Jennings, Goldberg created the situation in which he found himself, i.e. representing himself. Unlike Jennings, however, Goldberg had the wherewithal to remedy the situation and failed to do so. If Goldberg was deprived of a constitutional right, it was through his own conduct, and the deprivation is attributable neither to the court nor to the government. There was no error in our decisions to allow counsel to withdraw, to refuse to appoint new counsel, or to delay trial in order to allow Goldberg to retain counsel.

**5.** It should be added that Goldberg's request for a continuance in order to retain Mr. Costopoulos was indefinite for a number of reasons. First, Goldberg was required to liquidate assets in order to pay the retainer. The court was not made aware of the time necessary to do so, nor was it clear that the liquidation would produce assets sufficient to pay the entirety of a retainer. Moreover, even if the retainer was paid within the requisite 45 days, it was not clear that further continuance would not be necessary to acquaint new counsel with the case. These uncertainties, in combination with the fact that the entirety of the problem was created by Goldberg, add further support to our conclusion that Goldberg was not entitled to a continuance.