

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-1995

# United States v Goldberg

Precedential or Non-Precedential:

Docket 94-7565

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Goldberg" (1995). *1995 Decisions*. Paper 267.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/267

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 94-7565

———————————

UNITED STATES OF AMERICA

v.

RONALD J. GOLDBERG,

Appellant

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 94-cr-00039)

———————————

Argued August 22, 1995

Before:  GREENBERG, COWEN and SAROKIN, Circuit Judges

(Filed October 16, 1995)

———————————

Thomas Colas Carroll (ARGUED)
Carroll & Cedrone
Suite 750 Curtis Center
Independence Square West
Philadelphia, PA  19105

COUNSEL FOR APPELLANT


Frederick E. Martin (ARGUED)
David M. Barasch
Office of United States Attorney
240 West Third Street
P. O. Box 548
Williamsport, PA 17703-0548

COUNSEL FOR APPELLEE


———————————

**OPINION OF THE COURT**


1

COWEN, Circuit Judge.

We once again confront the tension caused when a criminal defendant appears to be manipulating his right to counsel in order to delay his trial. After relieving Ronald Goldberg's court-appointed attorney, the district court refused his request for a continuance in order to retain private counsel. This forced Goldberg to stand trial without the assistance of counsel. The district court concluded that by his manipulative conduct, Goldberg had "waived" or, more properly, "forfeited" his Sixth Amendment right to counsel.

The question before us is whether the district court deprived the defendant of his Sixth Amendment right to counsel. We conclude that, although there are circumstances in which the dilatory tactics of a defendant can amount to a forfeiture of his right to counsel, the record here is insufficient to support such a forfeiture. We further hold that the district court's failure to warn the defendant of the risks of self-representation precludes us from finding a valid "waiver by conduct." We therefore will reverse the judgment of conviction and remand the case to the district court for a new trial.

**I.**

Goldberg was serving a sentence at Lewisburg Penitentiary for a previous conviction. While serving that sentence he forged the signature of a magistrate-judge on a

document that purported to allow Goldberg unrestricted access to the prison's law library. Prison officials investigated the authenticity of the document and discovered the forgery. Goldberg was indicted for forging the signature of a judicial officer in violation of 18 U.S.C. § 505, and for making a materially false statement to a federal agency in violation of 18 U.S.C. § 1001.

Exactly how Goldberg came to be represented by court-appointed counsel is somewhat unclear. At some point Goldberg was provided with a questionnaire concerning his financial ability to retain counsel. It appears that the questionnaire was never completed. Prior to his arraignment on the indictment, however, Bradley Lunsford was assigned to represent Goldberg through the Federal Defender's Office pursuant to the practice in the Middle District of Pennsylvania of providing prisoners with a court-appointed attorney. The district court informed the parties that jury selection would commence on May 31, 1994.

Between these dates, Lunsford filed several motions on Goldberg's behalf. He also attempted to visit Goldberg in prison. On that occasion Goldberg refused to see Lunsford after making him wait over two hours. As a result they were unable to confer in person, although Lunsford and Goldberg thereafter did communicate by mail and telephone on several occasions.

On May 27, 1994, Goldberg filed on his own behalf a motion seeking a continuance in order to obtain new counsel or, in the alternative, to proceed "In Propia Persona" (sic). He also gave notice of his intention to pursue an insanity defense.

In support of his request to remove Lunsford, Goldberg alleged that Lunsford: (1) disagreed with him on how to conduct the defense; (2) was not well versed in federal criminal procedure; (3) showed no interest in his case; and (4) had not met with him to discuss the case and failed to file motions that Goldberg demanded be filed.

The district court on that day entered an order denying the request to pursue an insanity defense as untimely under Fed. R. Crim. P. 12.2. The court deferred consideration of Goldberg's request for a continuance, but noted that Goldberg's motion papers had failed to demonstrate good cause warranting a continuance. The district court nevertheless advised Goldberg that he would be given an opportunity to state on the record his reasons for believing that Lunsford's performance was inadequate. If persuaded, the district court advised that it would relieve Lunsford, appoint new counsel, and reconsider whether to grant a continuance. Alternatively, if the district court was not satisfied that Lunsford should be relieved, it would deny Goldberg's motion and require him to choose between going to trial with Lunsford or proceeding pro se.

Immediately prior to the commencement of jury selection on May 31, 1994, the district court conducted an inquiry into Goldberg's allegations concerning Lunsford. After hearing from both Goldberg and Lunsford, it concluded that Lunsford was providing adequate representation. Given the choice of continuing to be represented by Lunsford or proceeding pro se,

4

Goldberg chose to remain with Lunsford.[1]  At this point, however, Goldberg revealed for the first time that he had the financial resources to retain private counsel, and that several attorneys had conferred with him at Lewisburg.  The district court advised Goldberg that if he could retain an attorney by the commencement of trial, it would reconsider the motion seeking a continuance.

Lunsford requested permission to withdraw, asserting that he did not have a proper attorney-client relationship with Goldberg.  As an example, he stated that Goldberg was "threatening me and demanding that I do certain things that I don't feel are prudent." App. at 34.  The district court denied Lunsford's motion to withdraw and conducted jury selection with Lunsford representing Goldberg.  Following the selection of the jury, the parties and the jury were advised that the taking of testimony would commence between June 6 and June 13.

On June 2, 1994, the district court set June 13, 1994, as the first day for taking testimony.  The government also filed with the court a "Status Report" indicating that a simple check into Goldberg's visitation record at Lewisburg revealed several visits from three different attorneys over the past two months.

---

[1]According to the district court's opinion, the court did not allow defendant to proceed pro se because he failed to give a knowing, intelligent and voluntary waiver of his rights. See United States v. Goldberg, 855 F. Supp. 725, 727 (M.D. Pa. 1994). While this would appear to suggest that Goldberg had wanted to proceed pro se and that the trial court was not satisfied that he was competent to do so, this is clearly at odds with the record (and the position taken in both briefs), indicating that defendant affirmatively chose to keep his appointed attorney when given the option of pro se representation.

Four days later, Lunsford initiated a telephone conference between himself, the trial court and the government at which time he renewed his request to withdraw. Lunsford related that Goldberg had asked him to file a motion to withdraw as counsel. When Lunsford refused, noting the ruling of the district court on May 31, 1994, Goldberg allegedly threatened Lunsford's life. According to Lunsford, Goldberg stated that he had ample financial means to carry out his death threat as well as to hire a new attorney.

Without ordering that Goldberg be produced to answer Lunsford's allegations or relate his position in the matter, the district court granted Lunsford's motion to withdraw. The district court noted that June 13 was the first day for taking testimony and informed Goldberg that he would not receive another appointed attorney since Goldberg had the financial means to retain counsel. The district court warned Goldberg that "unless he retains an attorney who enters an appearance . . . in this case, the trial will proceed with the defendant representing himself." Supp. App. at 63. This order was delivered to Goldberg the day it was issued.

Goldberg appeared on June 13 for the first day of testimony. One of the attorneys who visited him at Lewisburg also was present in court. Noting that a private attorney had not entered an appearance, the district court asked Goldberg if he intended to represent himself. Goldberg presented the court with a letter from an attorney indicating that the attorney would

6

undertake to represent Goldberg, but only if a retainer was paid within forty-five days.

Referring to the letter from the attorney, Goldberg requested that the district court grant a continuance so that he could liquidate various assets, which would enable him to pay the retainer. The government opposed the application. Goldberg continued to assert his Sixth Amendment right to counsel. He related that he had done everything in his power to retain counsel in the short time available, and was incapable of trying a criminal case.

The district court denied Goldberg's request for a continuance. It observed that Goldberg had the financial ability to hire an attorney since the commencement of the case in April and failed to do so. The district court commented: "The Court finds that you have manipulated the judicial system for your own benefit, and the Court will not grant the continuance. The Court finds that by your conduct you have waived the right to proceed with counsel at this trial, and the Court simply will not tolerate that behavior." App. at 91.

The district court advised Goldberg about how to comport himself before the jury, and the manner in which it would answer any questions concerning the correct procedure to be followed. The government suggested that the attorney who had accompanied Goldberg to court be designated as stand-by counsel. Goldberg responded that stand-by counsel was not sufficient to satisfy his Sixth Amendment rights and that "I'm not making a valid waiver of my Sixth Amendment, Your Honor." App. at 94.

The district court responded, "No, and I'm not engaging in a colloquy with you with respect to that either. I'm determining that your actions have waived counsel, and that that was a knowing and voluntarily intentional act." Id. Goldberg again objected. He noted that the proposed stand-by counsel was not admitted to practice before the district court. Goldberg reiterated that, even if a defendant has waived his right to counsel, "it does not prohibit a defendant in a criminal case from reasserting his Sixth Amendment right, and in no way at all am I waiving my Sixth Amendment right to counsel." App. at 95.

Goldberg requested that the district court order Lunsford to return the case file to him, as it contained documents relevant to his defense. Following the morning session, Lunsford appeared in court and turned the file over to Goldberg. At this point, the district court sua sponte swore in Lunsford as a witness (out of the presence of the jury). For the first time it elicited sworn testimony from Lunsford concerning the events that had given rise to his earlier application to withdraw as counsel for Goldberg, which the district court already had granted during the June 6 telephone conference to which Goldberg was not party.

The trial went forward with Goldberg conducting his own defense. He was convicted on both counts of the indictment. The district court sentenced Goldberg to two, concurrent terms of imprisonment of twenty-four months, to run consecutively to sentences he was already serving.

8

The district court issued an opinion explaining why it had required Goldberg to proceed pro se. United States v. Goldberg, 855 F. Supp. 725, 727 (M.D. Pa. 1994). It quoted at length from its prior decision, United States v. Jennings, 855 F. Supp. 1427, 1441-43 (M.D. Pa. 1994), aff'd 61 F.3d 897 (3d Cir. 1995) (table), where it had found that the defendant had waived his right to counsel by punching his court-appointed attorney. The district court also concluded that Goldberg had not demonstrated good cause for his application on May 27, 1994, to substitute counsel. Goldberg, 855 F. Supp. at 730-32. Turning to its decision requiring Goldberg to represent himself, the district court relied on its Jennings decision. It explained that threatening one's attorney with physical violence like the actual use of force is tantamount to a "waiver" of the right to counsel. The district court further held that its decision to relieve Lunsford was "in furtherance of the orderly and effective administration of justice," and that the decision was proper where Goldberg was "manipulat[ing] the right to counsel in order to delay and disrupt his trial." Id. at 732, 733. This appeal followed.

## II.

The district court had original jurisdiction over this criminal action pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction to review a final judgment of conviction under 28 U.S.C. § 1291.

9

Goldberg presses two principal claims of error on appeal.[2] First, he challenges the district court's May 31, 1994, order forcing him to keep Lunsford essentially against his will. We review that decision for abuse of discretion. McMahon v. Fulcomer, 821 F.2d 934 (3d Cir. 1987); United States v. Welty, 674 F.2d 185 (3d Cir. 1982). Second, Goldberg claims that the district court violated his Sixth Amendment right to the assistance of counsel when, on the first day of testimony, it forced him to proceed pro se. We review de novo Goldberg's Sixth Amendment claim since it is tantamount to a claim of an ineffective waiver of a constitutional right. United States v. Velasquez, 885 F.2d 1076, 1080 (3d Cir. 1989), cert. denied, 494 U.S. 1017, 110 S. Ct. 1321 (1990). Our review is plenary notwithstanding the fact that the district court found a knowing and intelligent waiver and supported its legal conclusion with findings of fact. Determining the requirements that must be satisfied in order to find an effective waiver of a constitutional right is a question of law.

**III.**

---

[2]Because of our holding, we decline to reach Goldberg's additional claim that the district court's decision to relieve Lunsford during an ex parte proceeding deprived him of procedural due process. We also need not reach Goldberg's claim that the district court improperly directed a verdict on the element of materiality in 18 U.S.C. § 1001. See United States v. Gaudin, ___ U.S. ___, 115 S. Ct. 2310 (1995). We recognize, however, that on remand the district court will be required to submit the issue of materiality to the jury in accordance with the dictates of Supreme Court's intervening decision in Gaudin.

Goldberg first claims that the district court abused its discretion when, on May 31, it denied his May 27 request for a continuance so that he could retain a new attorney. We understand Goldberg's claim as alleging a Sixth Amendment violation arising from the fact that he was represented for a period of time by an attorney with whom he was dissatisfied.

**A.**

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI. Because it is essential to fair adjudication, see Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55 (1932), the right to counsel has long been considered "fundamental." Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963) (right to counsel so fundamental that it is binding on the states through the doctrine of incorporation); Johnson v. Zerbst, 304 U.S. 458, 462, 58 S. Ct. 1019, 1022 (1938) ("This is one of the safeguards . . . deemed necessary to insure fundamental human rights of life and liberty."); see also Chapman v. California, 386 U.S. 18, 23 & n.8, 87 S. Ct. 824, 827–28 & n.8 (1967) (right to counsel is so fundamental to our adversarial system that its deprivation can never be deemed harmless).

**B.**

On several prior occasions we have confronted situations where a defendant moved on the eve of trial for a continuance to retain substitute counsel. Because the denial of such a motion forces a defendant to choose between representation

11

by an attorney with whom he is dissatisfied and proceeding pro se, we set forth a two-part inquiry in Welty, 674 F.2d at 187, to balance a defendant's Sixth Amendment right to counsel with a district court's legitimate interest in guarding against manipulation and delay. The first inquiry requires a district court to determine whether good cause exists for granting the requested continuance. The second requires the district court to engage in an on-the-record colloquy to ensure that a defendant who chooses to represent himself is making a knowing, intelligent and voluntary waiver of his Sixth Amendment right to counsel. It is Welty's first inquiry that applies here.

In considering a last-minute request for substitution of counsel and a continuance, we require district courts to inquire as to the reason for the request. As we noted in Welty, the request need not be granted unless "good cause" is shown for the defendant's dissatisfaction with his current attorney. We defined good cause as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney. Id. at 188; see also McMahon, 821 F.2d at 942.

In several decisions following Welty, we have acknowledged that there are countervailing governmental interests. For instance, in United States v. Kikumura, 947 F.2d 72 (3d Cir. 1991), we noted that the district court should consider factors such as the efficient administration of criminal justice; the accused's rights, including the opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance. Id. at 78.

12

Similarly, in United States v. Romano, 849 F.2d 812 (3d Cir. 1988), we observed that a court has discretion to deny a request for a continuance if made in bad faith, for purposes of delay or to subvert judicial proceedings. Id. at 819. But "a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation." United States v. Rankin, 779 F.2d 956, 960 (3d Cir. 1986). These factors are relevant to the "good cause" analysis under Welty.

If the district court denies the request to substitute counsel and the defendant decides to proceed with unwanted counsel, we will not find a Sixth Amendment violation unless the district court's "good cause" determination was clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel. See McMahon, 821 F.2d at 944 (reversal warranted where district court relieved defendant's appointed attorney without inquiring into reason for withdrawal).

**C.**

We reject Goldberg's claim that the district court abused its discretion in denying his May 27, 1994, "emergency motion" to relieve counsel and for a continuance. First, we note that the district court properly complied with Welty by conducting an inquiry into the reasons for Goldberg's dissatisfaction with Lunsford. See Welty, 674 F.2d at 187; see also McMahon, 821 F.2d at 942. After hearing from both Goldberg and Lunsford, the district court found that Goldberg's disagreement with Lunsford amounted to a difference over

13

strategy. Specifically, Goldberg complained that Lunsford had not filed a host of motions that Goldberg insisted be filed. Analyzing the motions, the district court concluded (although after the fact) that they were meritless, if not frivolous. Goldberg, 855 F. Supp. at 730-32. Finding that Lunsford's refusal to file the motions did not amount to good cause, the district court found no basis for substituting counsel and delaying the trial.

We conclude that the findings of the district court are not clearly erroneous. Moreover, to the extent that Goldberg complains that the reasons supporting the district court's decision were not issued until some three weeks later, we nevertheless find that the record of the May 27 and May 31 proceedings amply support the district court's good cause determination. Accordingly, because we find no abuse of discretion in the denial of the continuance, any Sixth Amendment claim Goldberg alleges arising from his representation by an attorney with whom he was dissatisfied between May 31 and June 6 must fail.

## IV.

Goldberg asserts, however, that even if the district court did not abuse its discretion in denying his request for a continuance, it nevertheless violated his Sixth Amendment right to counsel when it forced him to proceed pro se. Goldberg challenges the district court's conclusion that he "waived" his

14

right to counsel through dilatory conduct. While recognizing that in certain circumstances a court may find a waiver by conduct, in this case Goldberg claims that his conduct was not so dilatory as to warrant the drastic remedy of forcing him to defend himself.

The government concedes that the district court did not engage in the sort of inquiry required by the Supreme Court's decision in Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975), and our decision in Welty. These cases require an on-the-record colloquy evincing both a knowing, voluntary and intelligent waiver of the right to counsel and an explanation by the district court of the risks of self-representation. As a suitable alternative to the colloquy required by Faretta and Welty, the government contends that there are certain factual scenarios in which "literally actions speak louder than words," Government's Br. at 40, and deliberate abusive conduct can result in a "waiver" of the right to counsel.

**A.**

Before turning to the merits of the government's contention, we note an important distinction between the ideas of "waiver" and "forfeiture," and a hybrid of those two concepts, "waiver by conduct." Both parties appear to have confused those issues, as have a number of courts that have addressed the effect of a defendant's dilatory tactics on the right to counsel. Because the resolution of that confusion has important implications for the Sixth Amendment, we begin with a discussion of "waiver," "forfeiture," and "waiver by conduct"

15

**1.**

A waiver is an intentional and voluntary relinquishment of a known right. Johnson, 304 U.S. at 464, 58 S. Ct. at 1023; see generally LaFave & Israel, Criminal Procedure, § 11.3(c), at 546 n.4. (2d ed. 1992). The most commonly understood method of "waiving" a constitutional right is by an affirmative, verbal request. Typical of such waivers under the Sixth Amendment are requests to proceed pro se and requests to plead guilty. The Supreme Court has made clear that a waiver of the right to counsel must be knowing, voluntary and intelligent. Johnson, 304 U.S. at 464-65, 58 S. Ct. at 1023. The High Court has emphasized the importance of an affirmative, on-the-record waiver, noting that it "indulge[s] every reasonable presumption against waiver of fundamental constitutional rights." Michigan v. Jackson, 475 U.S. 625, 633 , 106 S. Ct. 1404, 1409 (1986) (quoting Johnson, 304 U.S. at 464, 58 S. Ct. at 1023).

Where a defendant requests permission to proceed pro se, Faretta requires trial courts to ensure that the defendant is aware of the risks of proceeding pro se as a constitutional prerequisite to a valid waiver of the right to counsel. Faretta, 422 U.S. at 806, 95 S. Ct. at 2525. Moreover, our decision in Welty mandates that trial courts conduct a Faretta-type inquiry before permitting a defendant who asks to represent himself to do so:

> The court . . . has the responsibility of ensuring that any choice of self-representation is made knowing and intelligently, with an awareness of the dangers and disadvantages inherent in

16

> defending oneself. . . . In order to ensure
> that a defendant truly appreciates the
> "dangers and disadvantages of self-
> representation," the district court should
> advise him in unequivocal terms both of the
> technical problems he may encounter in acting
> as his own attorney and of the risks he takes
> if his defense efforts are unsuccessful. . .
> . [A] defendant's waiver of counsel can be
> deemed effective only where the district
> court judge has made a searching inquiry
> sufficient to satisfy him that the
> defendant's waiver was understanding and
> voluntary.

Welty, 674 F.2d at 188-89; see also United States v. Salemo, Nos.
94-1361 & 94-1438, 1995 WL 440390 (3d Cir. July 26, 1995)
(failure to warn of risks of self-representation render waiver of
right to counsel invalid); Government of Virgin Islands v. James,
934 F.2d 468 (3d Cir. 1991) (extensive colloquy between district
court and defendant about perils of proceeding pro se sufficient
to indicate that waiver of Sixth Amendment rights was knowing,
voluntary and intelligent); McMahon, 821 F.2d at 934 (failure to
provide warnings in accordance with Faretta and Welty requires
reversal).

### 2.

At the other end of the spectrum is the concept of
"forfeiture." Unlike waiver, which requires a knowing and
intentional relinquishment of a known right, forfeiture results
in the loss of a right regardless of the defendant's knowledge
thereof and irrespect__

17