**UNITED STATES of America**

v.

**Ronald J. GOLDBERG, Appellant.**

**No. 94–7565.**

United States Court of Appeals,
Third Circuit.

Argued Aug. 22, 1995.

Decided Oct. 16, 1995.

Thomas Colas Carroll (argued), Carroll & Cedrone, Philadelphia, PA, for Appellant.

Frederick E. Martin (argued), David M. Barasch, Office of United States Attorney, Williamsport, PA, for Appellee.

Before: GREENBERG, COWEN and SAROKIN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

We once again confront the tension caused when a criminal defendant appears to be manipulating his right to counsel in order to delay his trial. After relieving Ronald Goldberg's court-appointed attorney, the district court refused his request for a continuance in order to retain private counsel. This forced Goldberg to stand trial without the assistance of counsel. The district court concluded that by his manipulative conduct, Goldberg had "waived" or, more properly, "forfeited" his Sixth Amendment right to counsel.

The question before us is whether the district court deprived the defendant of his Sixth Amendment right to counsel. We conclude that, although there are circumstances in which the dilatory tactics of a defendant can amount to a forfeiture of his right to counsel, the record here is insufficient to support such a forfeiture. We further hold that the district court's failure to warn the defendant of the risks of self-representation precludes us from finding a valid "waiver by conduct." We therefore will reverse the judgment of conviction and remand the case to the district court for a new trial.

## I.

Goldberg was serving a sentence at Lewisburg Penitentiary for a previous conviction. While serving that sentence he forged the signature of a magistrate-judge on a document that purported to allow Goldberg unrestricted access to the prison's law library. Prison officials investigated the authenticity of the document and discovered the forgery. Goldberg was indicted for forging the signature of a judicial officer in violation of 18 U.S.C. § 505, and for making a materially false statement to a federal agency in violation of 18 U.S.C. § 1001.

Exactly how Goldberg came to be represented by court-appointed counsel is somewhat unclear. At some point Goldberg was provided with a questionnaire concerning his financial ability to retain counsel. It appears that the questionnaire was never completed. Prior to his arraignment on the indictment, however, Bradley Lunsford was assigned to represent Goldberg through the Federal Defender's Office pursuant to the practice in the Middle District of Pennsylvania of providing prisoners with a court-appointed attorney. The district court informed the parties that jury selection would commence on May 31, 1994.

Between these dates, Lunsford filed several motions on Goldberg's behalf. He also

attempted to visit Goldberg in prison. On that occasion Goldberg refused to see Lunsford after making him wait over two hours. As a result they were unable to confer in person, although Lunsford and Goldberg thereafter did communicate by mail and telephone on several occasions.

On May 27, 1994, Goldberg filed on his own behalf a motion seeking a continuance in order to obtain new counsel or, in the alternative, to proceed "*In Propia Persona*" (sic). He also gave notice of his intention to pursue an insanity defense. In support of his request to remove Lunsford, Goldberg alleged that Lunsford: (1) disagreed with him on how to conduct the defense; (2) was not well versed in federal criminal procedure; (3) showed no interest in his case; and (4) had not met with him to discuss the case and failed to file motions that Goldberg demanded be filed.

The district court on that day entered an order denying the request to pursue an insanity defense as untimely under Fed. R.Crim.P. 12.2. The court deferred consideration of Goldberg's request for a continuance, but noted that Goldberg's motion papers had failed to demonstrate good cause warranting a continuance. The district court nevertheless advised Goldberg that he would be given an opportunity to state on the record his reasons for believing that Lunsford's performance was inadequate. If persuaded, the district court advised that it would relieve Lunsford, appoint new counsel, and reconsider whether to grant a continuance. Alternatively, if the district court was not satisfied that Lunsford should be relieved, it would deny Goldberg's motion and require him to choose between going to trial with Lunsford or proceeding *pro se.*

Immediately prior to the commencement of jury selection on May 31, 1994, the district court conducted an inquiry into Goldberg's allegations concerning Lunsford. After hearing from both Goldberg and Lunsford, it concluded that Lunsford was providing adequate representation. Given the choice of continuing to be represented by Lunsford or proceeding *pro se*, Goldberg chose to remain with Lunsford.[1] At this point, however, Goldberg revealed for the first time that he had the financial resources to retain private counsel, and that several attorneys had conferred with him at Lewisburg. The district court advised Goldberg that if he could retain an attorney by the commencement of trial, it would reconsider the motion seeking a continuance.

Lunsford requested permission to withdraw, asserting that he did not have a proper attorney-client relationship with Goldberg. As an example, he stated that Goldberg was "threatening me and demanding that I do certain things that I don't feel are prudent." App. at 34. The district court denied Lunsford's motion to withdraw and conducted jury selection with Lunsford representing Goldberg. Following the selection of the jury, the parties and the jury were advised that the taking of testimony would commence between June 6 and June 13.

On June 2, 1994, the district court set June 13, 1994, as the first day for taking testimony. The government also filed with the court a "Status Report" indicating that a simple check into Goldberg's visitation record at Lewisburg revealed several visits from three different attorneys over the past two months.

Four days later, Lunsford initiated a telephone conference between himself, the trial court and the government at which time he renewed his request to withdraw. Lunsford related that Goldberg had asked him to file a motion to withdraw as counsel. When Lunsford refused, noting the ruling of the district court on May 31, 1994, Goldberg allegedly threatened Lunsford's life. According to Lunsford, Goldberg stated that he had ample financial means to carry out his death threat as well as to hire a new attorney.

1. According to the district court's opinion, the court did not allow defendant to proceed *pro se* because he failed to give a knowing, intelligent and voluntary waiver of his rights. *See United States v. Goldberg*, 855 F.Supp. 725, 727 (M.D.Pa.1994). While this would appear to suggest that Goldberg had wanted to proceed *pro se* and that the trial court was not satisfied that he was competent to do so, this is clearly at odds with the record (and the position taken in both briefs), indicating that defendant affirmatively chose to keep his appointed attorney when given the option of *pro se* representation.

Without ordering that Goldberg be produced to answer Lunsford's allegations or relate his position in the matter, the district court granted Lunsford's motion to withdraw. The district court noted that June 13 was the first day for taking testimony and informed Goldberg that he would not receive another appointed attorney since Goldberg had the financial means to retain counsel. The district court warned Goldberg that "unless he retains an attorney who enters an appearance ... in this case, the trial will proceed with the defendant representing himself." Supp.App. at 63. This order was delivered to Goldberg the day it was issued.

Goldberg appeared on June 13 for the first day of testimony. One of the attorneys who visited him at Lewisburg also was present in court. Noting that a private attorney had not entered an appearance, the district court asked Goldberg if he intended to represent himself. Goldberg presented the court with a letter from an attorney indicating that the attorney would undertake to represent Goldberg, but only if a retainer was paid within forty-five days.

Referring to the letter from the attorney, Goldberg requested that the district court grant a continuance so that he could liquidate various assets, which would enable him to pay the retainer. The government opposed the application. Goldberg continued to assert his Sixth Amendment right to counsel. He related that he had done everything in his power to retain counsel in the short time available, and was incapable of trying a criminal case.

The district court denied Goldberg's request for a continuance. It observed that Goldberg had the financial ability to hire an attorney since the commencement of the case in April and failed to do so. The district court commented: "The Court finds that you have manipulated the judicial system for your own benefit, and the Court will not grant the continuance. The Court finds that by your conduct you have waived the right to proceed with counsel at this trial, and the Court simply will not tolerate that behavior." App. at 91.

The district court advised Goldberg about how to comport himself before the jury, and the manner in which it would answer any questions concerning the correct procedure to be followed. The government suggested that the attorney who had accompanied Goldberg to court be designated as stand-by counsel. Goldberg responded that stand-by counsel was not sufficient to satisfy his Sixth Amendment rights and that "I'm not making a valid waiver of my Sixth Amendment, Your Honor." App. at 94. The district court responded, "No, and I'm not engaging in a colloquy with you with respect to that either. I'm determining that your actions have waived counsel, and that that was a knowing and voluntarily intentional act." *Id.* Goldberg again objected. He noted that the proposed stand-by counsel was not admitted to practice before the district court. Goldberg reiterated that, even if a defendant has waived his right to counsel, "it does not prohibit a defendant in a criminal case from reasserting his Sixth Amendment right, and in no way at all am I waiving my Sixth Amendment right to counsel." App. at 95.

Goldberg requested that the district court order Lunsford to return the case file to him, as it contained documents relevant to his defense. Following the morning session, Lunsford appeared in court and turned the file over to Goldberg. At this point, the district court *sua sponte* swore in Lunsford as a witness (out of the presence of the jury). For the first time it elicited sworn testimony from Lunsford concerning the events that had given rise to his earlier application to withdraw as counsel for Goldberg, which the district court already had granted during the June 6 telephone conference to which Goldberg was not party.

The trial went forward with Goldberg conducting his own defense. He was convicted on both counts of the indictment. The district court sentenced Goldberg to two concurrent terms of imprisonment of twenty-four months, to run consecutively to sentences he was already serving.

The district court issued an opinion explaining why it had required Goldberg to proceed *pro se. United States v. Goldberg,* 855 F.Supp. 725, 727 (M.D.Pa.1994). It quoted at length from its prior decision, *United*

*States v. Jennings,* 855 F.Supp. 1427, 1441–43 (M.D.Pa.1994), *aff'd* 61 F.3d 897 (3d Cir. 1995) (table), where it had found that the defendant had waived his right to counsel by punching his court-appointed attorney. The district court also concluded that Goldberg had not demonstrated good cause for his application on May 27, 1994, to substitute counsel. *Goldberg,* 855 F.Supp. at 730–32. Turning to its decision requiring Goldberg to represent himself, the district court relied on its *Jennings* decision. It explained that threatening one's attorney with physical violence like the actual use of force is tantamount to a "waiver" of the right to counsel. The district court further held that its decision to relieve Lunsford was "in furtherance of the orderly and effective administration of justice," and that the decision was proper where Goldberg was "manipulat[ing] the right to counsel in order to delay and disrupt his trial." *Id.* at 732, 733. This appeal followed.

## II.

The district court had original jurisdiction over this criminal action pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction to review a final judgment of conviction under 28 U.S.C. § 1291.

■ Goldberg presses two principal claims of error on appeal.[2] First, he challenges the district court's May 31, 1994, order forcing him to keep Lunsford essentially against his will. We review that decision for abuse of discretion. *McMahon v. Fulcomer,* 821 F.2d 934 (3d Cir.1987); *United States v. Welty,* 674 F.2d 185 (3d Cir.1982). Second, Goldberg claims that the district court violated his Sixth Amendment right to the assistance of counsel when, on the first day of testimony, it forced him to proceed *pro se.* We review *de novo* Goldberg's Sixth Amendment claim since it is tantamount to a claim of an ineffective waiver of a constitutional right. *United States v. Velasquez,* 885 F.2d

1076, 1080 (3d Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990). Our review is plenary notwithstanding the fact that the district court found a knowing and intelligent waiver and supported its legal conclusion with findings of fact. Determining the requirements that must be satisfied in order to find an effective waiver of a constitutional right is a question of law.

## III.

Goldberg first claims that the district court abused its discretion when, on May 31, it denied his May 27 request for a continuance so that he could retain a new attorney. We understand Goldberg's claim as alleging a Sixth Amendment violation arising from the fact that he was represented for a period of time by an attorney with whom he was dissatisfied.

### A.

■ The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Because it is essential to fair adjudication, *see Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the right to counsel has long been considered "fundamental." *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel so fundamental that it is binding on the states through the doctrine of incorporation); *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938) ("This is one of the safeguards ... deemed necessary to insure fundamental human rights of life and liberty."); *see also Chapman v. California,* 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 827–28 & n. 8, 17 L.Ed.2d 705 (1967) (right to counsel is so fundamental to our adversarial system that its deprivation can never be deemed harmless).

---

**2.** Because of our holding, we decline to reach Goldberg's additional claim that the district court's decision to relieve Lunsford during an *ex parte* proceeding deprived him of procedural due process. We also need not reach Goldberg's claim that the district court improperly directed a verdict on the element of materiality in 18

U.S.C. § 1001. *See United States v. Gaudin,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). We recognize, however, that on remand the district court will be required to submit the issue of materiality to the jury in accordance with the dictates of Supreme Court's intervening decision in *Gaudin.*

## B.

█ On several prior occasions we have confronted situations where a defendant moved on the eve of trial for a continuance to retain substitute counsel. Because the denial of such a motion forces a defendant to choose between representation by an attorney with whom he is dissatisfied and proceeding *pro se*, we set forth a two-part inquiry in *Welty*, 674 F.2d at 187, to balance a defendant's Sixth Amendment right to counsel with a district court's legitimate interest in guarding against manipulation and delay. The first inquiry requires a district court to determine whether good cause exists for granting the requested continuance. The second requires the district court to engage in an on-the-record colloquy to ensure that a defendant who chooses to represent himself is making a knowing, intelligent and voluntary waiver of his Sixth Amendment right to counsel. It is *Welty*'s first inquiry that applies here.

In considering a last-minute request for substitution of counsel and a continuance, we require district courts to inquire as to the reason for the request. As we noted in *Welty*, the request need not be granted unless "good cause" is shown for the defendant's dissatisfaction with his current attorney. We defined good cause as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney. *Id.* at 188; *see also McMahon*, 821 F.2d at 942.

█ In several decisions following *Welty*, we have acknowledged that there are countervailing governmental interests. For instance, in *United States v. Kikumura*, 947 F.2d 72 (3d Cir.1991), we noted that the district court should consider factors such as the efficient administration of criminal justice; the accused's rights, including the opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance. *Id.* at 78. Similarly, in *United States v. Romano*, 849 F.2d 812 (3d Cir.1988), we observed that a court has discretion to deny a request for a continuance if made in bad faith, for purposes of delay or to subvert judicial proceedings. *Id.* at 819. But "a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation." *United States v. Rankin*, 779 F.2d 956, 960 (3d Cir.1986). These factors are relevant to the "good cause" analysis under *Welty*.

█ If the district court denies the request to substitute counsel and the defendant decides to proceed with unwanted counsel, we will not find a Sixth Amendment violation unless the district court's "good cause" determination was clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel. *See McMahon*, 821 F.2d at 944 (reversal warranted where district court relieved defendant's appointed attorney without inquiring into reason for withdrawal).

## C.

█ We reject Goldberg's claim that the district court abused its discretion in denying his May 27, 1994, "emergency motion" to relieve counsel and for a continuance. First, we note that the district court properly complied with *Welty* by conducting an inquiry into the reasons for Goldberg's dissatisfaction with Lunsford. *See Welty*, 674 F.2d at 187; *see also McMahon*, 821 F.2d at 942. After hearing from both Goldberg and Lunsford, the district court found that Goldberg's disagreement with Lunsford amounted to a difference over strategy. Specifically, Goldberg complained that Lunsford had not filed a host of motions that Goldberg insisted be filed. Analyzing the motions, the district court concluded (although after the fact) that they were meritless, if not frivolous. *Goldberg*, 855 F.Supp. at 730–32. Finding that Lunsford's refusal to file the motions did not amount to good cause, the district court found no basis for substituting counsel and delaying the trial.

We conclude that the findings of the district court are not clearly erroneous. Moreover, to the extent that Goldberg complains that the reasons supporting the district court's decision were not issued until some three weeks later, we nevertheless find that the record of the May 27 and May 31 proceedings amply support the district court's

good cause determination. Accordingly, because we find no abuse of discretion in the denial of the continuance, any Sixth Amendment claim Goldberg alleges arising from his representation by an attorney with whom he was dissatisfied between May 31 and June 6 must fail.

## IV.

Goldberg asserts, however, that even if the district court did not abuse its discretion in denying his request for a continuance, it nevertheless violated his Sixth Amendment right to counsel when it forced him to proceed *pro se.* Goldberg challenges the district court's conclusion that he "waived" his right to counsel through dilatory conduct. While recognizing that in certain circumstances a court may find a waiver by conduct, in this case Goldberg claims that his conduct was not so dilatory as to warrant the drastic remedy of forcing him to defend himself.

The government concedes that the district court did not engage in the sort of inquiry required by the Supreme Court's decision in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and our decision in *Welty.* These cases require an on-the-record colloquy evincing both a knowing, voluntary and intelligent waiver of the right to counsel and an explanation by the district court of the risks of self-representation. As a suitable alternative to the colloquy required by *Faretta* and *Welty,* the government contends that there are certain factual scenarios in which "literally actions speak louder than words," Government's Br. at 40, and deliberate abusive conduct can result in a "waiver" of the right to counsel.

### A.

Before turning to the merits of the government's contention, we note an important distinction between the ideas of "waiver" and "forfeiture," and a hybrid of those two concepts, "waiver by conduct." Both parties appear to have confused those issues, as have a number of courts that have addressed the effect of a defendant's dilatory tactics on the right to counsel. Because the resolution of that confusion has important implications for the Sixth Amendment, we begin with a discussion of "waiver," "forfeiture," and "waiver by conduct".

### 1.

■ A waiver is an intentional and voluntary relinquishment of a known right. *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023; *see generally* LaFave & Israel, *Criminal Procedure,* § 11.3(c), at 546 n. 4 (2d ed. 1992). The most commonly understood method of "waiving" a constitutional right is by an affirmative, verbal request. Typical of such waivers under the Sixth Amendment are requests to proceed *pro se* and requests to plead guilty. The Supreme Court has made clear that a waiver of the right to counsel must be knowing, voluntary and intelligent. *Johnson,* 304 U.S. at 464–65, 58 S.Ct. at 1023. The High Court has emphasized the importance of an affirmative, on-the-record waiver, noting that it "indulge[s] every reasonable presumption against waiver of fundamental constitutional rights." *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986) (quoting *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023).

■ Where a defendant requests permission to proceed *pro se, Faretta* requires trial courts to ensure that the defendant is aware of the risks of proceeding *pro se* as a constitutional prerequisite to a valid waiver of the right to counsel. *Faretta,* 422 U.S. at 806, 95 S.Ct. at 2525. Moreover, our decision in *Welty* mandates that trial courts conduct a *Faretta*-type inquiry before permitting a defendant who asks to represent himself to do so:

> The court ... has the responsibility of ensuring that any choice of self-representation is made knowing and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself.... In order to ensure that a defendant truly appreciates the "dangers and disadvantages of self-representation," the district court should advise him in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful.... [A] defendant's waiver of counsel can be

deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary.

*Welty,* 674 F.2d at 188–89; *see also United States v. Salemo,* 61 F.3d 214 (3d Cir. July 26, 1995) (failure to warn of risks of self-representation render waiver of right to counsel invalid); *Government of Virgin Islands v. James,* 934 F.2d 468 (3d Cir.1991) (extensive colloquy between district court and defendant about perils of proceeding *pro se* sufficient to indicate that waiver of Sixth Amendment rights was knowing, voluntary and intelligent); *McMahon,* 821 F.2d at 934 (failure to provide warnings in accordance with *Faretta* and *Welty* requires reversal).

### 2.

At the other end of the spectrum is the concept of "forfeiture." Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. Referring to the confusion in the courts over this issue, LaFave and Israel observed that "[t]he term 'forfeiture' is preferred to 'waiver' because 'waiver' in the context of the right to counsel is generally used to refer to an 'intentional relinquishment of a known right'...." LaFave & Israel, *supra,* § 11.3(c), at 546 n. 4.

In *United States v. McLeod,* 53 F.3d 322 (11th Cir.1995), defense counsel moved to withdraw based upon the defendant's abusive conduct, threats to sue him, and demands that he engage in unethical conduct. After conducting a hearing at which the defendant was permitted to testify, the district court granted the defense attorney's motion to be relieved. *Id.* at 325–26. Explicitly acknowledging the distinction between "waiver" and "forfeiture," the Court of Appeals for the Eleventh Circuit concluded that "a defendant who is abusive toward his attorney may forfeit his right to counsel." *Id.* at 325.

It appears that the *McLeod* court stands alone in recognizing the distinction between "waiver" and "forfeiture." Typical of the confusion surrounding those concepts is *United States v. Mitchell,* 777 F.2d 248 (5th Cir.1985), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). In *Mitchell* the Court of Appeals for the Fifth Circuit held that a defendant who knowingly retains an attorney with a scheduling conflict and fails to secure other counsel within a reasonable time "waives" his right to counsel. "There is no abuse of discretion even though the denial of the continuance resulted in Mitchell's being unrepresented throughout the trial." *Id.* at 257. The *Mitchell* court did not discuss the implications of *Faretta* or *Johnson.* Its decision, therefore, rested on notions of forfeiture, not waiver.

### 3.

Finally, there is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel. *See, e.g., United States v. Bauer,* 956 F.2d 693 (7th Cir.) (failure to hire counsel where defendant has financial ability to do so constitutes a waiver by conduct), *cert. denied,* —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992); *United States v. Allen,* 895 F.2d 1577 (10th Cir.1990) (district court properly treated defendant's dilatory conduct as request to proceed *pro se* ).

Both *Bauer* and *Allen,* however, recognize that to the extent that the defendant's actions are examined under the doctrine of "waiver," there can be no valid waiver of the Sixth Amendment right to counsel unless the defendant also receives *Faretta* warnings. *Bauer,* 956 F.2d at 695; *Allen,* 895 F.2d at 1579; *see also United States v. Meeks,* 987 F.2d 575 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993).

Although the Supreme Court has not ruled directly on this issue, instructive is *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In *Allen* the Court considered whether a trial court could remove an unruly defendant from the courtroom without violating his Sixth Amendment right

to be present at his trial. The Court held that

> a defendant can lose his [Sixth Amendment] right to be present at trial if, *after he has been warned by the judge* that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him in the courtroom.

*Id.* at 343, 90 S.Ct. at 1060–61 (emphasis added) (footnote omitted). Whether or not the warning was required as a matter of constitutional law or under the particular facts is somewhat unclear. Suffice it to say that the Court has approved a trial court's decision to deprive a defendant of a fundamental constitutional right at least where the defendant is aware of the consequences of his actions, but regardless of whether the defendant affirmatively wishes to part with that right.

These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*. *See United States v. Fazzini*, 871 F.2d 635 (7th Cir.) (defendant who was warned about consequences of dilatory conduct insisted he was not waiving his right to counsel), *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989). Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

#### 4.

■ Recognizing the difference between "forfeiture" and "waiver by conduct" is important. First, because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a "waiver by conduct" could be based on conduct less severe than that sufficient to warrant a forfeiture. This makes sense since a "waiver by conduct" requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding *pro se*. *See Allen*, 397 U.S. at 337, 90 S.Ct. at 1057; *Faretta*, 422 U.S. at 806, 95 S.Ct. at 2525. A defendant who engages in dilatory conduct having been warned that such conduct will be treated as a request to proceed *pro se* cannot complain that a court is "forfeiting" his right to counsel.

Second, characterizing "forfeiture" cases as "waiver by conduct" cases could frustrate appellate review. As noted above, a true forfeiture can result regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se*, as required by *Faretta* and *Welty*. A district court that refers to "waiver by conduct" instead of "forfeiture" presumably would be on tenuous ground if it failed to follow the dictates of *Faretta* and *Welty*, even if the conduct in the case before it was sufficiently dilatory to constitute a forfeiture. It therefore is imperative that there be a clear recognition of the distinction between "waiver by conduct" and "forfeiture," since that recognition will produce a more accurate record and facilitate appellate review of alleged Sixth Amendment violations.

#### B.

While both parties implicitly have discussed the central issue in the instant appeal as pertaining to "waiver by conduct," we think "forfeiture" is the better approach to this case. Goldberg's central claim is that his conduct was not so dilatory as to warrant the severe sanction of requiring him to proceed to trial *pro se*. Goldberg alleges that the district court punished him and that "such punishment—even if under the euphemism 'waiver of counsel'—is to be reserved for extraordinary cases." Goldberg's Br. at 33.

The government also has discussed this case under the rubric of "waiver," although in reality it is advancing a "forfeiture" argument. The government acknowledges that

"Goldberg's conduct does not precisely fit within any reported case that deals with waiver of counsel." Government's Br. at 39. Recognizing that the conventional method of finding a waiver in this Circuit is to engage in the colloquy required by *Welty,* and conceding that no such colloquy occurred here, the government nevertheless contends that

> actions speak louder than words. That is to say, Trial Courts have concluded from deliberate, abusive conduct that a defendant has *lost his right* to court-appointed counsel and was required to represent himself, even under protestations, like those of Goldberg, that he wished to have an attorney's aid.

*Id.* at 40 (emphasis added) (citations omitted).

The district court's opinion also makes clear that its decision to relieve Lunsford and to force Goldberg to proceed *pro se* was based on notions of forfeiture, notwithstanding its repeated references to "waiver." First, its reliance on *Jennings,* 855 F.Supp. at 1441–43, where it had found that the defendant had "waived" his right to counsel by striking his court-appointed attorney, demonstrates that the district court viewed abusive conduct as a sufficient basis upon which to deprive a defendant of his Sixth Amendment right to counsel. Second, many of the findings the district court made on the issue of "waiver" pertained to Goldberg's alleged threat on Lunsford's life. Finally, the district court explicitly referred to Goldberg's dilatory tactics in finding that he had "waived the right to appointed counsel...." *Goldberg,* 855 F.Supp. at 731–33. Thus, this case turns primarily on whether there was a valid forfeiture of the right to counsel since, as we will explain below, there cannot be a valid waiver by conduct in this matter.

### C.

■ We have never explicitly adopted a pure forfeiture analysis in this Circuit. *Jennings,* 855 F.Supp. at 1427, was affirmed in an unpublished opinion and, thus, cannot constitute precedential authority for the disposition of this appeal. Third Circuit I.O.P. Ch. 5 § A.2; *United States v. Turley,* 891 F.2d 57, 60 (3d Cir.1989). Even if we were

to accept a forfeiture argument, which as we have noted requires extremely serious misconduct, the facts of this case would not support such a result.

Essential to the government's forfeiture reasoning is Goldberg's conduct in threatening his attorney's life. Similarly, in examining the district court's published opinion, we note that at least six of the sixteen separate findings the district court made on the issue of "waiver" pertained to Goldberg's alleged threat on Lunsford's life. *Goldberg,* 855 F.Supp. at 732–33. We note, however, that the district court's factual findings concerning Goldberg's death threat were made at a hearing held one week *after* the June 6 telephone conference to which Goldberg was not a party.

We make no express finding as to the implications of this procedure on Goldberg's Fourteenth Amendment right to procedural due process. Nevertheless, we believe that on the facts of this case an *ex parte* hearing where the defendant's interests were not represented cannot be used to justify a *post hoc* forfeiture argument. In *McLeod,* where the Court of Appeals for the Eleventh Circuit found that the defendant's abusive conduct forfeited his right to counsel, the district court had conducted a hearing at which McLeod was present and permitted to testify. *McLeod,* 53 F.3d at 325–26. Absent the alleged death threat, moreover, the record here contains insufficient additional evidence of "abusive conduct" from which to conclude as a matter of law that Goldberg forfeited his right to counsel.

■ Furthermore, any claim that Goldberg waived his right to counsel by conduct is precluded by the government's concession that the district court failed to inform Goldberg of the risks of self-representation in accordance with *Faretta* and *Welty.* Thus, even though there may be conduct dilatory enough to constitute a waiver by conduct but insufficient to support a pure forfeiture, *compare Bauer,* 956 F.2d at 693 *with McLeod,* 53 F.3d 322, we need not determine whether Goldberg's conduct in this case amounted to a waiver by conduct. The record clearly establishes that the district court took no

affirmative step to ensure that Goldberg "truly appreciate[d] the dangers and disadvantages of self-representation." *Welty*, 674 F.2d at 188. Accordingly, there can be no valid waiver by conduct in this case.

Finally, we reject the government's harmless error analysis. It is well settled that the erroneous deprivation of a criminal defendant's fundamental right to the assistance of counsel is *per se* reversible error. *Chapman*, 386 U.S. at 23 & n. 8, 87 S.Ct. at 827–28 & n. 8; *Salemo*, 61 F.3d at 221–22; *Welty*, 674 F.2d at 194 n. 6; *cf. Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (although divided over question whether admission of coerced confession at trial is subject to constitutional harmless error inquiry, Court appears unanimously to reaffirm *Chapman*'s statement that erroneous deprivation of right to counsel is *per se* reversible error).

## V. CONCLUSION

For the foregoing reasons the judgment of conviction will be reversed and the case remanded to the district court for a new trial.