NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2748
_____

UNITED STATES OF AMERICA,

v.

WYDOVE BROWN,

Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 2:09-cr-00257)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit LAR 34.1(a)
September 22, 2011
_____

Before: FISHER, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: December 8, 2011)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

1

Appellant Wydove Brown ("Brown") was charged in a one-count Indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He was convicted by a jury. Brown appeals his conviction. For the reasons explained below, we will affirm the District Court's Judgment.

# I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

On November 12, 2008, two cars filled with police officers from the Newark Police Department saw a group of men, including Brown, in a notorious open air drug market. After seeing the police, the men dispersed, and Sergeant William Connolly ("Connolly") observed Brown cross South 15th Street in Newark, NJ, while holding something at his waistband. Concerned that Brown had a gun, the officers stopped their cars, and Connolly instructed Brown to stop. According to the officers, Brown continued walking and crouched down near a minivan, placing the gun on the ground near a tire. Another officer heard the gun hit the ground and the officers apprehended Brown.

As part of an omnibus motion, Brown moved to suppress the gun. In support of the motion, he submitted a certification articulating a different set of facts leading to his arrest. According to Brown, the police confronted him on the street, searched him for no reason, and took his keys. His keys included the keys to a car that he had borrowed to

2

drive to the area. He stated that the police opened the vehicle, searched it, and found a gun inside the glove compartment.

The District Court conducted a hearing on the various issues raised in Brown's omnibus motion, but it did not resolve the suppression issue. During the hearing, the parties disclosed that Brown's license was suspended at the time of his arrest, and the parties did not contest that particular fact. The District Court accepted Brown's articulation of the facts for the purpose of resolving the motion to suppress and denied the motion. The Court held that Brown did not have a legitimate expectation of privacy in the vehicle as an unlicensed driver and, therefore, lacked standing to challenge the search of the vehicle. Brown filed a motion for reconsideration and requested a full evidentiary hearing on the issue of standing. The District Court held the motion for reconsideration in abeyance, deciding to wait until after it had heard all of the evidence presented at trial. After hearing the evidence presented at trial, the District Court gave Brown an opportunity to offer additional evidence on the motion to suppress. Defendant Brown did not offer new evidence and the Court again found that Brown lacked standing.

Brown's first trial ended in a mistrial. Before the start of the second trial, Brown moved the Court to relieve his current lawyer from representing him and to have the Court appoint new counsel. The Court denied his request. After hearing all of the evidence in the second trial, defense counsel asked the Court to reopen the suppression motion and consider it on its merits in light of the trial testimony. The Court ruled that it

3

would not revisit its prior determination on standing because Brown did not present any persuasive grounds for reopening the motion. The Court further reasoned that the weighing of the evidence on the issue of suppression would yield the same result – the police officers' testimony regarding recovery of the gun would stand. In the Court's view, when comparing the officers' testimony to Defendant Brown's certification, Brown's version of the facts was entirely incredible. Hence even if the Court determined that Brown had standing, the Court would have allowed the gun and the accompanying testimony into evidence.

A second jury found Brown guilty of being a felon in possession of a gun. Brown was sentenced to 120 months of imprisonment. Brown filed a timely appeal.

## II. JURISDICTION

The District Court had subject matter jurisdiction over this criminal matter under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III. ANALYSIS

Brown raises five issues on appeal: (1) the District Court erred in permitting Brown to be shackled during trial; (2) the District Court erred in failing to appoint Brown substitute counsel; (3) the District Court erred in failing to hold a pre-trial hearing on Brown's motion to suppress; (4) the District Court erred in denying Brown's motion to

4

suppress; and (5) the District Court erred by permitting the Government to vouch for its witnesses.

A.  Shackling

Brown argues that the District Court impaired his right to counsel and his due process rights by permitting him to be shackled during his trial without conducting a proper inquiry or providing adequate justification.  We review the district court's decision to require a defendant to wear shackles for an abuse of discretion.  *Deck v. Missouri*, 544 U.S. 622, 629 (2005).

In making a decision on the use of shackles, the trial court must make a determination about whether an "essential state interest" justifies shackling a particular defendant during the case at bar.  *See Deck*, 544 U.S. at 624 ("[T]he Constitution forbids the use of visible shackles . . . . during the guilt phase, *unless* that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial.") (internal citations omitted).  A review of the record indicates that the District Court conducted a specific inquiry and made specific findings regarding the use of shackles on Brown.  The District Court heard testimony from a United States Marshal about Brown's history of assault and combative interactions with law enforcement; including Brown's involvement in a recent assault inside the Essex County Jail.  Defense counsel then proffered information regarding the nature of Brown's prior convictions, which included aggravated assault, burglary, robbery and distribution of controlled

5

dangerous substances ("CDS"). Appellant's counsel did not dispute the record or the determination; and, he conceded, on the record, that the shackles would not affect Brown's ability to confer with counsel.

The District Court found that the evidence supported a decision to shackle Brown's feet during the proceedings. Additionally, the District Court noted for the record that the shackles were covered by a draping over defense counsel's table and thus would not be visible to the jury. The Court also ensured that Appellant would be seated at the witness stand before the jury entered the courtroom to further ensure no specter of prejudice from seeing the shackles by the jury.

We find that the District Court articulated specific findings relating to the necessity of the shackles based on legitimate safety concerns. The District Court did not abuse its discretion in requiring Brown to be shackled during trial.

B. Request for Substitute Counsel

Brown challenges the District Court's denial of his request to appoint new counsel after his first trial. We review such challenges under an abuse of discretion standard. *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995).

When a defendant seeks to replace his attorney or proceed *pro se* on the eve of trial, the District Court must inquire about the reason for a defendant's request for new counsel and only grant such requests if the defendant shows "good cause" for his dissatisfaction with his attorney. *Goldberg*, 67 F.3d at 1098; *see United States v. Welty*,

6

674 F.2d 185, 187-88 (3d Cir. 1982). We define "good cause" as a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *Welty*, 674 F.2d at 188.[1] In cases, such as this, where the district court denied the request to substitute counsel and proceeded with the unwanted counsel, "we will not find a Sixth Amendment violation unless the district court's 'good cause' determination was clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel." *Goldberg*, 67 F.3d at 1098. Brown's assertions present no basis for such findings.

The District Court made an appropriate inquiry into Appellant's request for new counsel. During a hearing on the morning of the second trial, the District Court specifically asked Brown's counsel to provide more information on his client's request for a new lawyer. Brown interjected to provide the reasoning himself, stating, "I don't want him to represent me no more, it's just that simple." App. 81. Brown specifically asserted that counsel was not making the arguments that he wanted him to make and that counsel had not put certain evidence into the record as Brown had desired.

---

[1] We have also acknowledged that countervailing government interests are relevant in the good cause analysis. Such interests include " the efficient administration of criminal justice, the accused's rights, including the opportunity to prepare a defense; the rights of other defendants awaiting trial who may be prejudiced by a continuance" and whether the request is made in bad faith or for the purpose of delaying the proceeding. *Goldberg*, 67 F.3d at 1098. Here, the District Court explicitly considered its schedule and the significant delay that would result if it appointed new counsel.

After a brief recess to consult with his client, counsel indicated that there had been a breakdown in communication "in the sense that [Brown was] insistent that certain things be done" and counsel did not "think they [could] or should be done." App. 86. After listening to Brown's concerns, hearing arguments from the Government, and observing defense counsel's performance up to that point in time, the Court concluded that Brown had not shown good cause for seeking substitute counsel. The District Court noted that Brown's reasons for requesting a substitution were based on differences in strategy. The Court also noted that defense counsel had performed outstandingly during Brown's first trial. It then directly addressed the source of the purported communication breakdown by indicating that, moving forward, it would address any strategic requests made by Brown *in camera*. Brown provided no evidence of a conflict of interest or an irreconcilable conflict with his counsel. The District Court found that Brown failed to provide good cause for substituting counsel, as required by this Court. *See Goldberg*, 67 F.3d at 1098.

Appellant also asserts that the District Court erred by implying that he did not have the right to proceed pro se, once it determined that a continuance was not warranted. *See Welty*, 674 F.2d at 187 ("If the district court determines that the defendant is not entitled to a continuance in order to engage new counsel, the defendant is then left with a choice between continuing with his existing counsel or proceeding to trial pro se, thus bringing into play the court's second stage of inquiry."). Appellant's claim is

unsupported by the record. The District Court did not imply that Appellant could not proceed pro se, but rather articulated its understanding that Brown did not feel "capable of representing himself pro se" based on the colloquy at the hearing. App. 92. When the Court later made the statement, "even if you had that option," at no point did it say that he did not have the option of proceeding pro se. *Id*. Rather the Court suggested that, in its opinion, even if Brown could capably represent himself pro se, he was wise in opting not to do so. *Id*.

We find that the District Court conducted the proper inquiry and did not abuse its discretion in denying Brown's motion to substitute his attorney. Further, the Court did not imply that Brown lacked the option to proceed pro se, and therefore, committed no error on that ground.

C. Pretrial Hearing and Ruling on the Motion to Suppress

Brown's arguments regarding the motion to suppress are two-fold. First, he argues that the District Court erred by not holding a pretrial evidentiary hearing to determine whether he had standing for his motion to suppress the firearm. Second, he argues that the District Court erred in denying his motion to suppress.

We review a denial of a hearing on a pretrial motion for an abuse of discretion. *See United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010). We "review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts."

9

*United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (quoting *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008) (alteration in original)).

Evidentiary hearings are not required for pretrial motions as a matter of course. *See* Fed. R. Crim. P. 12(c). However, a defendant is entitled to a hearing for a motion to suppress if the motion presents "a colorable constitutional claim" and "there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Hines*, 628 F.3d at 105 (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)); *see* Fed. R. Civ. P. 56(a) (reflecting 2010 amendment restating the summary judgment standard as one regarding a "genuine dispute as to any material fact" as opposed to prior language referencing a genuine "issue"). The District Court stated that it would consider whether Brown had standing to challenge the search, and if so, whether there was enough of a factual dispute, based on his certification, to conduct a hearing. The District Court concluded that Brown lacked standing because he did not have a legitimate expectation of privacy in the vehicle as an unlicensed driver and denied his motion to suppress without a pretrial hearing. *See United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) ("[T]he proponent of a motion to suppress bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in the place searched.") (internal quotations, alterations and citations omitted).

Brown moved for reconsideration, and the Court agreed to revisit the suppression issue after the Government presented its case in chief at trial. At the end of the first trial,

the Court again denied the motion to suppress for lack of standing. After both parties presented their evidence in the second trial, defense counsel asked the Court to reopen the suppression hearing and consider the motion on its merits. Equipped with the same witness testimony that would have been presented in a pretrial hearing, the District Court rejected Brown's request. In doing so, it recounted Brown's version of the facts and the evidence presented in support of Brown's motion and found his testimony to be incredible. The Court then stated that even if it had reopened the motion to suppress, it would most certainly deny the motion because the testimony proffered by the defense was not credible. [2]

While we believe that such critical factual determinations should be resolved in a pretrial hearing, any "error" arising from its failure to hold such hearing is harmless. *Voigt*, 89 F.3d at 1068. The Court's resolution of the suppression issue turned on its assessment of the officers' and Brown's testimony. The trial testimony and corresponding motion filings by the parties provided the Court with a sufficient record against which it could measure Brown's claims. *See id*. After doing so, it carefully considered the evidence and articulated its findings based on the facts. Thus, the District Court did not abuse its discretion by not holding a pretrial hearing on Brown's motion to suppress.

---

[2] Mr. Sales (apprehended by the same group of police on the night of Brown's arrest) and Ms. Rhonda Blanks (the owner of the car) provided testimony supporting Brown's articulation of the facts. The Court considered their testimony and reasonably found that both of them lacked credibility.

Brown also challenges the District Court's November 6, 2009 Order denying his motion to suppress. The District Court's legal conclusion that an authorized, unlicensed driver lacks standing to challenge the search of a vehicle causes some concern for this Court. However, we need not assess this legal conclusion to determine whether the District Court erred in this case. The District Court's pretrial Order denied the motion on standing grounds without reaching the underlying factual disputes. In addressing the suppression issue at trial, the Court clearly articulated that it was refusing to reopen the motion based on its substantive determination that Brown's testimony and the evidence he would have presented lacked credibility.

We do not lend our imprimatur to the District Court's legal conclusion that Brown had no reasonable expectation of privacy in the vehicle because he was an unlicensed driver.[3] We will, however, affirm the District Court's substantive denial of Brown's motion to suppress as we find no clear error in its credibility determinations or factual findings.

D. Vouching

Finally, Brown alleges that the District Court erred in allowing the prosecution to vouch for the credibility of its witnesses during trial. Specifically, Brown asserts that the prosecutor vouched for Sergeant Connolly and Officer Nevels during their respective

---

[3] The District Court's conclusion was based on jurisprudence addressing rental cars. *See United States v. Haywood*, 324 F.3d 514, 516 (7th Cir. 2003). This case does not address rental cars, and we need not opine on whether such an analogy is apposite here.

redirect examinations by asking, "in the times that we have met to prepare for this case, what was the number one rule we always instructed you to do?" App. 121, 122-23. In both instances, the Appellant objected to the question and the District Court overruled the objections, permitting the officers to answer. [4] We review the District Court's ruling on such contemporaneous objections for abuse of discretion. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

Our Court defines vouching as "an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). A review of the record indicates that the prosecutor made no such assurance. Rather, he asked the witnesses about his instruction for them to tell the truth while testifying because Appellant's theory of the case and cross-examination called their credibility into question. We have previously stated that "where a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching." *Id*. at 187. The content of the redirect examination, on its face, shows that the Prosecutor never assured the jury of either witnesses' credibility, let alone did so based on his personal knowledge. In light of these facts, we find that the Prosecutor did not vouch for Sergeant Connolly and

---

[4] In response to this question, Sergeant Connolly replied, "[t]ell the truth" (App. 121) and Officer Nevels answered, "[t]o be honest" (App. 122-23).

Officer Nevels and that the District Court did not abuse its discretion in allowing the testimony.

## IV. <u>CONCLUSION</u>

We find that the District Court did not abuse its discretion regarding the following issues: allowing Appellant to be shackled during the trial; not appointing Brown substitute counsel; not conducting a pretrial hearing on the issue of standing for Appellant's motion to suppress and its subsequent denial of the motion; and determining that the Government did not vouch for its witnesses in its redirect examinations. We will affirm the District Court's Judgment.