IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAX F. SACKMAN,[1] | § | |
| | § | No. 554, 2018 |
| Respondent Below, | § | |
| Appellant, | § | Court Below – Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| JOY SEABURN, | § | File No. CK16-02055 |
| | § | Petition Nos. 16-17534 and 17-02180 |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: February 28, 2020
Decided: March 4, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

This 4th day of March, 2020, having considered the briefs, the record below, including the Family Court's January 31, 2020 Order on Remand, the argument of counsel, and the parties supplemental memoranda, it appears to the Court that:

(1)    Max Sackman ("Father") appeals from a Family Court order granting maternal aunt, Joy Seaburn ("Aunt"), guardianship of one of Father's minor children ("Child").  Father raises one issue on appeal—whether the Family Court erred when

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

it refused to appoint Father new counsel during the guardianship hearing when his first counsel withdrew because of Father's threatening behavior.

(2)     After hearing oral argument, we found that the record did not allow us to decide whether the Family Court abused its discretion by refusing to appoint new counsel.  Consequently, by an Order dated December 3, 2019, a copy of which is attached as an addendum to this Order, we retained jurisdiction but remanded to the Family Court to make a more complete record of the reasons for its refusal to appoint new counsel.

(3)     On January 24, 2020, the Family Court held a hearing in accordance with our December 13, 2019 Order.  The hearing was attended by Father, his former counsel, Aunt, and Aunt's counsel.

(4)     After the Family Court heard testimony from Father and his former counsel, the court entered its Order on Remand, finding that Father engaged in "extremely serious conduct [in the guardianship proceedings] by which he forfeited his right to counsel."[2]

(5)     Upon this Court's receipt of the Family Court's Order on Remand, the Clerk of the Court directed the parties to file supplemental memoranda addressing the Family Court Order on Remand on or before February 21, 2020.

---

[2] Jan. 31, 2020 Order on Remand in *Sackman v. Seaburn*, Del. Fam. Ct., File No. CK16-02055, Pet. No. 16-17534.

2

(6)     On February 20, 2020 Aunt filed her supplemental memorandum, urging us to affirm the Family Court's determination that Father forfeited his right to counsel.  That same day, Father submitted a letter, which the Court considered a Motion for Extension of Time under Supreme Court Rule 15(b), requesting an additional sixty days within which to file his supplemental memorandum.  We denied Father's request for a sixty-day extension, but extended the deadline until February 28, 2020.

(7)     On February 28, 2020, Father submitted his supplemental memorandum in which he states that he "was only polite and at all times respectful toward any and everyone working on [his] case"[3] and that "[the] intimidation thing is made up."[4]  The memorandum also (i) describes Father's dissatisfaction with his first counsel before her withdrawal in the guardianship proceedings below, (ii) accuses counsel and Father's child's therapist of misrepresenting facts to the Family Court, and (iii) challenges the impartiality of the Family Court.  In his memorandum, Father does not, however, challenge any of the factual findings set forth in the Family Court's Order on Remand.

(8)     We are satisfied that the Family Court's determination that Father, by engaging in extremely serious misconduct, forfeited any right to counsel he may

---

[3] Appellant's Supplemental Memorandum at 5, Feb. 28, 2020.
[4] *Id.* at 9.

have had in this case was not an abuse of discretion. The misconduct identified by the Family Court included angry reactions to counsel's advice, acting in a loud and aggressive manner, using profanity, claiming that counsel was a racist, accusing her of conspiring with opposing counsel, making reference to his own violent criminal history in a manner that was intended to intimidate counsel, and making an angry and inappropriate reference to counsel's husband. Under these circumstances, the Family Court acted well within its discretion when it permitted Father's counsel to withdraw and refused to appoint new counsel.

NOW, THEREFORE, IT IS ORDERED that the Family Court's September 27, 2018 Final Order awarding guardianship to Aunt and supervised visitation to Father is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAX F. SACKMAN,[5] | § | |
| | § | No. 554, 2018 |
| Respondent Below, | § | |
| Appellant, | § | Court Below – Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| JOY SEABURN, | § | File No.  CK16-02055 |
| | § | Petition Nos.  16-17534 and 17-02180 |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: September 25, 2019
Decided:    December 3, 2019

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 3rd day of December, 2019, having considered the briefs and the record below, and having heard oral argument, it appears to the Court that:

(1)    Max Sackman ("Father") appeals from a Family Court order granting maternal aunt, Joy Seaburn ("Aunt"), guardianship of one of Father's minor children ("Child").  Father raises one issue on appeal—whether the Family Court erred when it refused to appoint Father new counsel during the guardianship hearing when his

---

[5] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

first counsel withdrew because of Father's threatening behavior. We find that the record on appeal does not allow us to decide whether the Family Court abused its discretion by refusing to appoint new counsel. Thus, we retain jurisdiction and remand to the Family Court to make a more complete record of the reasons for its refusal to appoint new counsel.

(2) Child was born in 2012. In 2014, Father learned he was Child's father through paternity testing.[6] Sometime after Father was released from prison in 2016, police found Child's mother dead from a drug overdose at Father's residence.[7] The Family Court awarded Aunt emergency temporary guardianship with specific visitation by Father.[8] After resolving some procedural issues not relevant to this appeal, the Family Court consolidated and scheduled a hearing on Aunt's two petitions for guardianship, one of which sought permanent guardianship. The Family Court appointed counsel for Father at his request because he was indigent.[9] We refer to Father's counsel as "Counsel" in this order.

(3) The Family Court scheduled three non-consecutive days for the hearing. On the first day of the hearing, Aunt withdrew her request for permanent

---

[6] App. to Answering Br. at B350–51.
[7] *Id*. at B173, B359–60.
[8] App. to Opening Br. at A78–79.
[9] *Id*. at A82.

guardianship and pursued only guardianship.[10]  Six days before the second hearing day, Counsel filed an emergency motion to withdraw and for a continuance.

(4)    In her motion to withdraw, Counsel told the Family Court that Father "implied increasing distrust of Counsel's representation of him, her motives, and the quality of [her] legal advice."[11]  She further explained that "[e]ffective communication between Father and [C]ounsel [had] been difficult,"[12] as evidenced by the appearance, without prior notice to Counsel, of several witnesses on Father's behalf on the first day of the hearing.  Counsel also recounted that Father sent her "multiple e-mails criticizing and questioning her motives, legal advice and strategy."[13]  Based on these interactions, according to the emergency motion,

---

[10] Under a guardianship, a parent is entitled to certain rights of visitation, contact, and information delineated in a guardianship agreement.  13 *Del. C.* § 2331.  Under a permanent guardianship, a parent has the same rights as under a guardianship.  13 *Del. C.* § 2350.  But a "[p]ermanent guardianship is intended to create a relationship between a child and caretaker which is permanent and self-sustaining, and which creates a permanent family for the child without complete severance of the biological bond."  *Id.*  Given these distinctions, the standard that is applied to the modification of a guardianship order is different than the standard applied to the modification of permanent guardianship orders. A guardianship order "may be modified at any time if the child is no longer dependent or neglected, and it is in the best interests of the child to modify the order."  13 *Del. C.* § 2332(b)(2).  In contrast, "[t]he Court shall modify or terminate a permanent guardianship only upon a finding: (1) [t]hat there has been a substantial change in material circumstances; and (2) [t]hat modification or termination is in the best interests of the child."  13 *Del.C.* § 2359(b).  Moreover, when a permanent guardianship is terminated, "custody of the child shall not automatically revert to the parent . . . [who] shall be considered with no greater priority than any other person or agency."  13 Del. C. § 2359(c).
[11] App. to Opening Br. at A89.
[12] *Id.* at A90.
[13] *Id.* at A91.

7

Counsel advised the court that she was "exceedingly uncomfortable continuing with the representation" and requested leave to withdraw.[14]

(5) The court initially denied the motion, and Counsel requested—and was granted—an emergency teleconference with the court. [15] Aunt's attorney and Counsel's supervising attorney participated in the call, but Father did not.

(6) During the teleconference, after first telling the court that she believed that ethical constraints[16] precluded her from providing a full account of Father's conduct, Counsel stressed that she had used the words "exceedingly uncomfortable" in her emergency motion "for a reason."[17] In particular, Counsel said that, although she had not been overtly threatened, she nevertheless felt that her safety was "at

---

[14] *Id.* at A92.

[15] Counsel's request for the emergency teleconference was made on April 11, 2018, the day on which the written emergency motion to withdraw was mailed to Father, *Id.* at A101–02, and was ultimately granted. *Id.* at A104.

[16] It is unclear whether Counsel's reticence was a product of her effort to protect confidential communications or to shield the court from information she thought would prejudice Father in the Family Court's eyes. In either case, Counsel's attempt to protect her client's interests is laudable. But the implicit, if not explicit, premise of Counsel's motion to withdraw—a premise that the Family Court accepted and applied to Father's motion for appointment of new counsel—was that acting as Father's lawyer in this litigation posed a threat to the personal safety of the lawyer. Under such circumstances, it is within the lawyer's discretion to disclose the client's threatening statements and conduct. *See* DEL. R. PROF. CONDUCT 1.6(b)(1) ("A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to prevent reasonably certain . . . substantial bodily harm."). Rules such as DRPC 1.6 "recogniz[e] discretion in a lawyer to prevent the consequences of threats to . . . personal safety." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 66 cmt. a (2000).

[17] App. to Answering Br. at B451.

risk."[18]  She added that Father had accused her of being racist and remarked on his criminal record, which contained "multiple criminal offenses of a violent nature that have not been prosecuted."[19]  Considering all this, Counsel was "concerned that, if this case does not resolve favorably to [Father], he will be coming after [her] and perhaps [her] staff."[20]

(7)    Counsel's supervising attorney offered that "as" [Counsel's] supervisor, . . . based on what [Counsel] ha[d] told [him] about the specific things the client ha[d] said, the way in which he said them, and the intimidation . . . experienced by [Counsel]," he believed that Counsel had "a duty to ask to get out of the case."[21]

(8)    Throughout the teleconference, Counsel and her supervisor steadfastly avoided disclosure of what Father said and did that caused her to fear for her safety. Nevertheless, faced with these facts and representations from Counsel and without hearing from Father, the Family Court granted Counsel's motion to withdraw.

(9)    The following day, Father moved for a continuance of the second hearing day, which was then scheduled to convene in four days.  He also moved the

---

[18] *Id.*

[19] *Id*. at B452.  The trial judge commented that he was "not all that interested" in the charges that were not prosecuted.  *Id*. at B455.

[20] *Id*. at B453.

[21] *Id*. at B457–8.

court to appoint new counsel. The Family Court granted Father's continuance request, but denied his request for new counsel, reasoning that "Counsel advised the Court that [Father's] behavior was intimidating and she was concerned for the safety of herself and her staff. I will not appoint another lawyer."[22]

(10) Against this background, Father claims that the Family Court erred as a matter of law by not appointing new counsel for Father after the Family Court granted his first counsel's motion to withdraw for threatening behavior. According to Father, by appointing counsel in the first instance, the Family Court recognized that there were significant parental interests at stake. Thus, Father argues that, after allowing Father's first counsel to withdraw, the Family Court should have appointed new counsel unless the court found that Father waived or forfeited the right to new counsel. According to Father, he did not waive his right to counsel and the Family Court record was insufficient to find a forfeiture because the details of Father's threatening behavior were not made part of the record.

(11) Assuming for purposes of this proceeding that Father had a right to have counsel appointed for him because he was indigent—an issue we do not decide in this appeal—waiver requires either an affirmative statement expressly waiving the right to counsel or waiver by conduct—which requires that the defendant be "warned that he will lose his attorney if he engages in dilatory tactics [and] any misconduct

---

[22] App. to Opening Br. at A110 (emphasis in original).

thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel."[23]  Regardless, "[w]aiver is a knowing and intentional relinquishment of a known right."[24]  Here, we know that Father did not waive his right to counsel, either expressly or by conduct.  His "Motion [for] Reappointment of Counsel" filed the day after the Family Court granted Counsel leave to withdraw shows conclusively that Father did not expressly waive his right to counsel.  And Father's putative misconduct was not preceded by the warning that is a prerequisite to waiver by conduct.  We therefore interpret the Family Court's denial of Father's motion as quoted above as a finding that Father, by his behavior toward Counsel, forfeited any right to counsel.

(12)  In *Bultron v. State*, we recognized that a litigant who is otherwise entitled to court-appointed counsel may forfeit that right by engaging in "extremely serious misconduct."[25]  We have serious concerns about Father's conduct towards his counsel.  On that score, we do not question the Family Court's decision to grant Counsel's motion for leave to withdraw.  The record shows that Father ignored Counsel and criticized her performance.  He also appears to have refused to follow her advice about the conduct of the hearing, and, by word or deed—albeit not

---

[23] *Bultron v. State*, 897 A.2d 758, 763, 763 n.8 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995)).

[24] *Id.*

[25] *Id.* at 765–66, (citing *United States v. Leggett*, 162 F.3d 237, 250 (3d Cir.1998) (quoting *Goldberg*, 67 F.3d at 1102)).

11

explicitly disclosed—caused her to fear for her personal safety and the safety of others in her office. But counsel believed she was bound by the Delaware Rules of Professional Conduct from disclosing any details about Father's conduct. This leaves us with a record on appeal with nothing other than conclusory allegations that Father engaged in "extremely serious misconduct" towards his counsel such that he has forfeited appointment of new counsel.[26]

NOW, THEREFORE, IT IS ORDERED that this case be remanded to the Family Court for a hearing to make findings consistent with this order. At the hearing, Father's former counsel should make a record of the circumstances which led her to conclude that Father engaged in threatening behavior towards her and others, and Father should be given the opportunity to respond.[27] Jurisdiction is retained.[28]

BY THE COURT:

/s/ *Gary F. Traynor*
Justice

---

[26] *Id.* at 765 (citing *Leggett*, 162 F.3d at 250 (quoting *Goldberg*, 67 F.3d at 1102)).

[27] *See id*. at 761–62 (describing the counsel's recounting of the details of his client's threatening and insulting behavior directed at the counsel).

[28] After perfecting his appeal in this Court, Father requested that we appoint counsel to represent him. In an Order dated February 7, 2019, we granted Father's motion and appointed Gretchen S. Knight, Esquire, and David H. Williams, Esquire, to serve as Father's counsel on appeal. Although we retain jurisdiction, we also relieve Ms. Knight and Mr. Williams from any further obligations if they so choose, save forwarding this Order to Father and ensuring that the Family Court has Father's current contact information, under the February 7, 2019 Order, with the sincere gratitude of the Court.