J-S35042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AYODELE GABRIEL OKE, | : | |
| | : | |
| Appellant | : | No.  1873 EDA 2018 |

Appeal from the PCRA Order Entered June 15, 2018
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003220-2011

BEFORE:  OLSON, J., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:             **FILED AUGUST 19, 2019**

Ayodele Gabriel Oke (Appellant) appeals from the June 15, 2018 order which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Upon review, we affirm.

"On April 4, 2011, [A]ppellant was arrested for the armed robbery of Shawn T. Schwarz." **Commonwealth v. Oke**, 108 A.3d 126 (Pa. Super. 2014) (unpublished memorandum at 1).  It is the events following Appellant's arrest, as well as certain actions during his subsequent trial, which occurred from April 30 to May 2, 2012, that form the basis of the issues in this case. Specifically, Appellant takes issue with the actions, or lack thereof, of various counsel who were either hired by him or appointed to represent him during

_____

* Retired Senior Judge assigned to the Superior Court.

these periods. Thus, we set forth the lengthy and "tortuous" procedural history of this case. *Id*.

After Appellant was arrested, he posted $50,000 bail. A preliminary hearing was held on May 3, 2011, where Appellant was represented by private counsel, Attorney Michael Parlow. At the close of that hearing, most charges were held for court. *See* N.T., 5/3/2011 (unnumbered). Appellant was scheduled for a formal arraignment on July 13, 2011. He did not appear, and a bench warrant was issued.

On July 18, 2011, Appellant appeared for a hearing on the bench warrant, without counsel appearing on his behalf, before the Honorable William T. Nicholas. It was Appellant's position that because he filed a notice to remove this case to federal court,[1] the trial court lacked jurisdiction over him, and he did not have to appear for formal arraignment. The trial court gave Appellant two options: (1) be formally arraigned and plead not guilty, or (2) waive formal arraignment. Appellant asked to speak to his "regular attorney," Attorney Parlow. N.T., 7/18/2011, at 5. The trial court advised Appellant that he could speak to Attorney Damien Brewster, the public defender assigned to the courtroom that day. After significant back and forth, the trial court entered pleas of not guilty on Appellant's behalf.[2] *Id*. at 9. The

---

[1] Appellant *pro se* filed a "Notice of Removal" on June 8, 2011.

[2] A review of the transcript reveals Appellant's obstreperous conduct, and it is this conduct which pervades the many hearings in this case and causes most of the problems about which Appellant now complains on appeal.

- 2 -

trial court then addressed the bench warrant. Once again, it was Appellant's position that he did not appear for his formal arraignment because his case was in federal court, and he did not believe the formal arraignment would occur. *Id*. at 10. The trial court revoked the bench warrant and reinstated the $50,000 bail. *Id*. at 19.

A pre-trial conference was scheduled for August 8, 2011. Appellant failed to appear, his bail was revoked, and a bench warrant was issued. On August 25, 2011, Attorney Parlow filed an emergency petition for bail reduction on Appellant's behalf. On August 29, 2011, Appellant appeared for a hearing on that petition represented by Attorney Geoffrey Hood.[3] The trial court reset bail at $50,000, and Appellant was able to go home.

Meanwhile, Attorney Gregory Nester of the Office of the Public Defender entered his appearance on Appellant's behalf. On October 17, 2011, Appellant appeared for a pre-trial conference before the Honorable Joseph A. Smyth. There was confusion as to who was representing Appellant. The trial court thought Appellant was represented by Attorney Parlow; however, Attorney Nester appeared and explained that his office had called Attorney Parlow's office and was informed that Attorney Parlow was not representing Appellant. Attorney Nester told the trial court that Appellant wished to hire private

---

[3] Attorney Hood is Attorney Parlow's law partner. According to Attorney Hood, there was "miscommunication" between his office and Appellant, which led to confusion regarding court dates and representation. N.T., 8/29/2011, at 3.

counsel. N.T., 10/17/2011, at 3. Appellant then told the trial court, "I never indicated that." *Id*. The trial court scheduled the case for trial on January 24, 2012. In addition, the trial court asked Appellant to submit to a competency evaluation by Dr. Lucille Rocio Nell Badra.[4]

On January 19, 2012, the Commonwealth filed a petition to revoke Appellant's bail due to Appellant's having been arrested on new charges. On January 24, 2012, Appellant appeared *pro se* for the bail hearing. Over Appellant's objection, the trial court revoked Appellant's bail. In addition, the trial court pointed out that the competency evaluation deemed Appellant incompetent to stand trial. Thus, the trial court ordered a full psychiatric evaluation due to Appellant's "oppositional" behavior. N.T., 1/24/2012, at 7. Appellant requested that he be permitted to contact his attorney, "Mr. Cohen." *Id*. The trial court told Appellant that his attorney could file a motion.

The psychiatric evaluation was completed by Dr. Ayyaswamy from the Norristown State Hospital. In that evaluation, Dr. Ayyaswamy concluded that Appellant was competent to stand trial. Thus, the trial court held what it deemed to be a new formal arraignment proceeding on March 19, 2012. N.T., 3/19/2012, at 3. At that hearing, the record indicates that Attorney Nester was appearing on Appellant's behalf as standby counsel. The trial court explained the following to Appellant.

---

[4] The issue regarding who was representing Appellant was not resolved that day.

[Appellant,] our previous time[5] we met in court you indicated that you did not wish to hire counsel and you did not wish to have a public defender appointed. At that time, I appointed [Attorney] Nester as [standby] counsel to represent you in these proceedings.

I would like to reiterate again today that you certainly have the right to have your own counsel represent you. You either can pay for counsel to represent you, counsel of your choice; or if you do not wish to do that in view of the fact that you are now incarcerated, I think you have the right to a public defender and I would appoint a public defender to represent you.

As I've indicated previously, I already appointed [Attorney] Nester as [standby] counsel.

I think it is … to your benefit to have an attorney represent you, whether you have your own lawyer, or whether you have [Attorney] Nester represent you.

N.T., 3/19/2012, at 3-4.

The trial court then set forth the charges against Appellant as would be done at a formal arraignment. The trial court then encouraged Appellant once again to have a lawyer represent him, whether he hire one or have Attorney Nester take that role. The court stated, "I'm about to have you arraigned. Do you wish to have [Attorney] Nester as your lawyer during your arraignment?" *Id*. at 8. Appellant replied, "Objection, sir, I can't proceed until jurisdiction is set on the record." *Id*. at 9. Appellant then engaged in a soliloquy complaining of the fact that he has not confronted witnesses and arguing that the state does not have power to bring the charges against him. *Id*. at 9-11. The

---

[5] It is not clear from the record to which appearance the trial court was referring.

- 5 -

Commonwealth then set forth the charges over Appellant's objections. *Id*. at 11-45. Trial was set for April 30, 2012.

On April 24, 2012, Attorney Michael Quinn, privately-retained counsel, filed an emergency motion for modification of bail. That motion was denied the same day.[6]

On April 30, 2012, Appellant appeared *pro se* with Attorney Nester as standby counsel. The trial court urged Appellant once again to permit Attorney Nester to represent him. The trial court explained that Appellant's objection as to the court's jurisdiction was preserved even if Attorney Nester was representing him. After detailed explanations of the charges and potential penalties, the trial court specifically asked Appellant if he still wished to represent himself. Appellant replied, "I mean, I still don't understand how this case can proceed without subject matter jurisdiction being stated on the record." N.T., 4/30/2012, at 14. Appellant then asked the trial court to continue the case for one day to permit him to hire private counsel. *Id*. at 20. The trial court granted that motion, concluding that it would continue with jury selection that day, but not commence testimony until the following day. Appellant appeared *pro se* for trial the following day with Attorney Nester as standby counsel. The jury trial proceeded, and on May 2, 2012, Appellant was found guilty of the seven charges against him. The trial court remanded Appellant to prison while awaiting sentencing.

---

[6] No transcript of this hearing, if there was one, appears in the record.

After numerous continuances, on January 17, 2013, Appellant was sentenced to an aggregate term of 9 years and 1 month to 43 years and 11 months of imprisonment. Appellant *pro se* filed a notice of appeal.[7] On October 30, 2014, this Court affirmed Appellant's judgment of sentence. *Oke*, *supra*.

On November 6, 2015, Appellant filed *pro se* a PCRA petition. On May 24, 2016, Attorney Elliot Cohen entered his appearance on Appellant's behalf.[8] Counsel filed a PCRA petition on Appellant's behalf on July 29, 2016. The Commonwealth filed an answer,[9] and the PCRA court[10] conducted hearings on June 9, 2017, September 14, 2017, and February 7, 2018.[11] On June 15,

---

[7] Prior to disposition of that appeal, this Court remanded this case to the trial court to determine the status of counsel. On March 6, 2013, the trial court conducted a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). The trial court permitted Attorney Nester to withdraw as standby counsel, and Appellant represented himself in his direct appeal.

[8] It is not clear whether this Attorney Cohen is the same as the Attorney Cohen to whom Appellant was referring at his January 24, 2012 bail hearing discussed *supra*.

[9] In addition, there were several supplements to the PCRA petition and several answers thereto.

[10] By this point, Judge Smyth had retired, and the case was assigned to Judge Todd Eisenberg.

[11] It is worth noting that the first of these hearings, on June 9, 2017, began with Appellant firing Attorney Cohen. The PCRA court explained to Appellant that he could either proceed with Attorney Cohen or proceed *pro se*. Appellant requested a continuance to obtain new counsel, which the PCRA court denied. However, Appellant maintained he did not want to represent himself, but he also did not want to have Attorney Cohen represent him. N.T., 6/9/2017, at

2018, the PCRA court entered an order denying Appellant PCRA relief. Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant has set forth 17 issues for our review. Based upon the nature of the issues presented, we offer the following summary. It is Appellant's position that he was either (1) denied his right to counsel, or (2) provided ineffective assistance of counsel[12] by the numerous attorneys, both privately-retained and appointed,[13] who were involved in this case. According to Appellant, once any of the aforementioned attorneys entered an appearance or appeared on Appellant's behalf, that attorney had to keep representing Appellant until the court permitted that attorney to withdraw or

---

7. The hearing then proceeded, and it was Appellant's position that he was being "forced to proceed with" Attorney Cohen. *Id*. at 8.

[12] Although Appellant uses the term "ineffective assistance of counsel" on numerous occasions throughout his brief, he never sets forth the three-prong ineffective-assistance-of-counsel test, and his arguments in support of ineffective assistance are akin to his arguments that he was denied counsel when that counsel did not continue to represent him despite never having been granted leave to withdraw his appearance. *See* Appellant's Brief at 13, 18, 24, 26, 27, 29, and 32. Accordingly, to the extent Appellant is claiming any counsel were ineffective, he has waived those claims. *See* *Commonwealth v. Fears*, 86 A.3d 795, 807 (Pa. 2014) ("When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development.") (internal quotation marks omitted).

[13] By way of summary, as discussed *supra*, the following attorneys were involved in this case: Attorney Parlow (privately-retained), Attorney Hood (privately-retained), Attorney Brewster (appointed), Attorney Nester (appointed), and Attorney Quinn (privately-retained).

the attorney could produce a written agreement with Appellant that his services were no longer required. Appellant argues he was abandoned by these counsel, but since they were his attorneys, he could also not proceed *pro se* because hybrid representation is not permitted. **See** Appellant's Brief at 13-19 (regarding Attorney Quinn), **id**. at 19-26 (regarding Attorney Nester), **id**. at 26-27 (regarding Attorney Quinn again), **id**. at 27-29, 31-32 (regarding Attorney Nester), **id**. at 32-35 (regarding Attorney Brewster), **id**. at 35-36 (regarding Attorney Nester again), **id**. at 36-38 (regarding Appellant's appearing *pro se* on January 24, 2012), **id**. at 38-39 (regarding Appellant's appearing *pro se* on March 19, 2012, as well as having Attorney Nester as standby counsel), **id**. at 39-40 (regarding Appellant's appearing *pro se* on November 30, 2011, as well as having Attorney Nester as standby counsel), **id**. at 40-41 (regarding Attorney Hood), and **id**. at 41 (regarding Attorney Parlow). In addition, Appellant claims his sentence was illegal. **See** **id**. at 30.

We begin with our standard of review. "Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014) (internal citations omitted).

J-S35042-19

In considering the PCRA court's rationale for the denial of relief regarding Appellant's contentions that the trial court denied his constitutional right to counsel, we consider the following case law distinguishing between the waiver of counsel and the forfeiture of counsel.[14] In **Commonwealth v. Kelly**, 5 A.3d 370 (Pa. Super. 2010), this Court considered a situation where Kelly, a criminal defendant, rejected both court-appointed counsel and court-appointed standby counsel. Despite warnings by the trial court that Kelly would be left to represent himself if he continued his pattern of failing to cooperate with counsel, Appellant proceeded *pro se* and eventually accepted a plea agreement. On direct appeal, Kelly argued that the plea was entered unknowingly and involuntarily because he was denied the right to counsel. The **Kelly** Court provided the following lengthy analysis of this issue.

> The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. However, the constitutional right to counsel of one's own choice is

_____

[14] During the course of these proceedings, Appellant objected both to representing himself and being represented by the counsel who was appearing on his behalf, whether privately-retained or appointed. Thus, Appellant has arguably waived all issues regarding the denial of counsel during the trial court proceedings for failing to raise them in his direct appeal. **See** 42 Pa.C.S. § 9544(b) ("For purposes of [the PCRA], an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). However, as discussed *supra*, the status of counsel at any given point was a cause for confusion in the trial court; and therefore, out of an abundance of caution, we will address the merits of his claims.

- 10 -

not absolute. Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.

*Commonwealth v. Lucarelli*, [] 971 A.2d 1173, 1178-79 ([Pa.] 2009) (citations omitted).

Our Supreme Court also noted:

The situation is different for a defendant who is not employing counsel at his own expense, and who, at public expense, seeks court-appointed counsel. Such a defendant does not have a right to choose the particular counsel to represent him. Nor, after counsel has been appointed, can he change to other assigned counsel unless a substantial reason exists for the change.

*Commonwealth v. Rucker*, [] 761 A.2d 541, 542 n.1 ([Pa.] 2000) [(internal citations omitted)].

In *Lucarelli*, our Supreme Court also stated:

Like the Superior Court in *Commonwealth v. Thomas*, 879 A.2d 246, 257-59 (Pa. Super. 2005), we find persuasive the distinction between waiver and forfeiture made by the Third Circuit Court of Appeals in *United States v. Goldberg*, 67 F.3d 1092, 1099-1101 (3d Cir. 1995). Waiver is "an intentional and voluntary relinquishment of a known right." *Id*. at 1099. By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004) (quoting *Goldberg*, *supra* at 1100-02).....

- 11 -

The consequences of the distinction between waiver of the right to counsel and forfeiture of the right to counsel are significant because, we now hold, Pa.R.Crim.P. 121 and its colloquy requirements do not apply to situations where forfeiture is found. To hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance. Should an unrepresented defendant choose not to engage in the colloquy process with the trial court, were there no provision for forfeiture of counsel, that defendant could impermissibly clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. Such a result would be untenable. *See **United States v. Thomas**, **supra*** at 362 ("Forfeiture can result regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se*.") (quoting **Goldberg**, **supra** at 1101).

***Id***. at [] 971 A.2d at 1179.

The factual background of [Kelly's] case clearly shows this is not a waiver of counsel case. Kelly never formally waived his right to counsel, nor did the trial court engage Kelly in a Rule 121 colloquy for waiver of counsel.

The trial court, instead, denied Kelly's right to counsel on another basis: intentional forfeiture by engaging in dilatory conduct.

In **Goldberg**, the Third Circuit defined "intentional forfeiture" as follows:

[T]here is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.

....

- 12 -

> These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*. Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

*Goldberg*, 67 F.3d at 1100-01 (citations omitted).

> The question is whether the trial court erred in making such finding. We conclude it did not.

> While neither the United States Supreme Court nor our Supreme Court has expressly ruled on the level of misconduct or defiance that may give rise to forfeiture, we hold, under the circumstances of the case, Kelly knowingly forfeited his right to counsel.

*Kelly*, 5 A.3d at 377-79 (footnotes omitted).

Based on the foregoing, we conclude that the instant matter, as in *Kelly*, is a forfeiture-with-knowledge/waiver-by-conduct situation. As detailed *supra*, the record is replete with evidence that it was Appellant's dilatory conduct that caused all confusion as to whether Appellant wished to proceed with counsel and who exactly Appellant wanted to have representing him. While Appellant consistently maintained he did not wish to proceed *pro se*, he also had disagreements with every counsel with whom he had either hired or to whom he was assigned. Accordingly, we conclude the trial court in no way denied counsel to Appellant at any point. **See Kelly**, 5 A.3d at 381 ("The Constitution does not force an unwanted attorney upon a defendant. If the

defendant does not agree with his counsel, he has a right to present his own contentions; but the sovereign is under no duty to search for counsel until it finds one who will agree with him.") (internal citations and quotation marks omitted).

In fact, as detailed *supra*, the trial court went above and beyond to attempt to explain to Appellant his right to counsel and the perils of proceeding *pro se*. Instead, Appellant engaged in a pattern of conduct that left the trial court no option but to permit Appellant to proceed *pro se*. **See id**. at 381 ("We have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel.... He may not use this right to play a 'cat and mouse' game with the court ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel."). In addition, as discussed *supra*, the trial court even took the additional step of appointing standby counsel on Appellant's behalf. Based on the foregoing, we conclude that any claim that Appellant was unconstitutionally deprived of counsel during the course of the trial court proceedings does not warrant relief.

Finally, Appellant contends that his sentence is illegal. Specifically, he argues that because he was not ordered to pay restitution, his sentence was

illegal in violation of 18 Pa.C.S. § 1106(a), and should be vacated as a whole.[15]

Appellant's Brief at 30. According to Appellant, the "obligation to pay restitution is mandatory," and the failure of the trial court to order it invalidates his entire sentence. *Id*.

We begin by pointing out that "questions regarding the court's authority with respect to ordering restitution implicate the legality of a sentence." *Commonwealth v. Burwell*, 42 A.3d 1077, 1084 (Pa. Super. 2012).

> As long as the reviewing court has jurisdiction, a challenge to the legality of the sentence is non-waivable and the court can even raise and address it *sua sponte*. Issues relating to the legality of a sentence are questions of law.... As with all questions of law on appeal, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Even though we have jurisdiction to review Appellant's claim, we conclude that Appellant does not have standing to raise this issue.

> In Pennsylvania, a party seeking judicial resolution of a controversy must establish as a threshold matter that he has standing to maintain the action…. The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution to his challenge.

---

[15] Appellant raised two different illegal-sentence claims in his PCRA petition. *See* Petitioners Memorandum of Law and Fact in Support of his Post Conviction Relief Act Issues, 3/8/2018, at 1 (arguing sentence is illegal because the trial court ordered Appellant to pay $35 to the Crime Victim's Compensation Fund, and because Appellant was not ordered to pay restitution). The PCRA Court addressed only the former. *See* PCRA Court Opinion, 9/21/2018, at 6 (concluding Appellant's sentence was not illegal where Appellant was directed to pay $35 to the Crime Victim's Compensation Fund).

***Johnson v. American Standard***, 8 A.3d 318, 329 (Pa. 2010) (internal citations and quotation marks omitted).

Here, Appellant admits he was not ordered to pay restitution. Accordingly, he is not an aggrieved party and cannot challenge his sentence on this basis.

Because Appellant is not entitled to relief, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19